UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| CELLULAR COMMUNICATIONS EQUIPMENT LLC, <br><br> Plaintiff, <br><br> v. <br><br> SAMSUNG ELECTRONICS CO., LTD., et al <br><br> Defendants. | § § § § § § § § § § § § Civil Action No. 6:14-cv-759-JRG <br><br> JURY TRIAL DEMANDED |

**DEFENDANTS' JOINT MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM**

**I.   INTRODUCTION**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Samsung Electronics Co., Ltd; Samsung Electronics America, Inc.; Samsung Telecommunications America, LLC;[1] AT&T Mobility LLC; Cellco Partnership d/b/a Verizon Wireless; Sprint Solutions, Inc.; Sprint Spectrum L.P.; Boost Mobile, LLC; T-Mobile USA, Inc.; and T-Mobile US, Inc. (collectively, "Defendants") hereby jointly move to dismiss Plaintiff Cellular Communications Equipment LLC's ("CCE") claims of induced infringement, contributory infringement, and willful infringement for failure to state a claim.  CCE's claims in the First Amended Complaint ("FAC") are threadbare recitals of the elements of the causes of action, supported by mere conclusory

---

[1] On January 1, 2015, Samsung Telecommunications America, LLC ("STA") merged into Samsung Electronics America, Inc., and STA ceased to exist as a separate corporate entity.  On January 14, 2015, the parties filed a Stipulation of Dismissal of STA.  *See* Dkt. No. 27.

1

statements, and devoid of factual allegations. As a result, CCE's allegations are insufficient to put Defendants on notice of the bases for CCE's claims of infringement.[3]

First, CCE's allegations of induced infringement fail on three independently sufficient grounds because they do not sufficiently allege facts as to any of the three requisite elements. CCE similarly fails to meet any of the four requirements for pleading its contributory infringement claims, as the FAC fails to sufficiently allege direct infringement by a third party, knowledge of the patents, that the accused "component" has no substantial noninfringing uses, and that the accused "component" is a material part of the invention. Finally, CCE's allegations of willful infringement are nothing more than a tacked-on, formulaic recitation of the willful infringement standard, devoid of any factual basis. In many cases, CCE's claims rely on the impossible allegation that Defendants knew of the asserted patents *before the patents issued*. Because, the FAC does not enable Defendants to properly investigate and defend against CCE's claims, CCE's claims of induced infringement, contributory infringement, and willful infringement should be dismissed.

## II.    CCE'S INFRINGEMENT ALLEGATIONS

The FAC alleges direct infringement of seven United States patents. FAC at 1-2. CCE also alleges indirect infringement—by inducing infringement and/or contributing to infringement, of four of the patents. *See, e.g.*, FAC ¶ 33. CCE also alleges willful infringement of six of the patents. CCE's allegations of indirect infringement and willfulness are as follows:

---

[3] CCE's FAC is similar to other complaints CCE previously filed in this district regarding some of the same patents asserted in this case. *See*, *e.g.*, *Cellular Commc'ns Equip. LLC v. Apple Inc. et al.*, E.D. Tex. Case No. 6:14-cv-251-LED, ECF No. 39. The same deficiencies present in those previous complaints are present in the FAC in this case, as discussed below.

|  | **Indirect infringement alleged** | **Willful infringement alleged** |
|---|---|---|
| **Count 1: U.S. Patent No. 6,819,923** |  | X |
| **Count 2: U.S. Patent No. 8,055,820** | X | X |
| **Count 3: U.S. Patent No. 6,810,019** |  | X |
| **Count 4: U.S. Patent No. 7,218,923** |  |  |
| **Count 5: U.S. Patent No. 7,941,174** | X | X |
| **Count 6: U.S. Patent No. 8,645,786** | X | X |
| **Count 7: U.S. Patent No. 8,254,872** | X | X |

A.  **Indirect Infringement**

CCE's allegations of indirect infringement of the '820, '174, '786, and '872 Patents consist of the following nearly identical boilerplate accusations:

> Defendants . . . have and continue to directly and/or indirectly infringe (by inducing infringement and/or contributing to infringement) one or more claims of the . . . patent . . . by or through their making, having made, offering for sale, selling, importing, and/or use of [the accused products].

FAC ¶¶ 33, 69, 83, and 97.

> Defendants are liable for indirect infringement of the . . . patent because they induce and/or contribute to the direct infringement of the patent by their customers and other end users who use the [accused products] to practice the claimed methods.

FAC ¶¶ 35, 71, 85, and 99.

> Despite having knowledge of the . . . patent, Defendants named in this Count have and continue to specifically intend for persons who acquire and use the [accused products], including Defendants' customers, to use such devices in a manner that infringes the [patent] . . . This is evident when Defendants encourage and instruct customers and other end users in the use and operation of the [accused products].

FAC ¶¶ 37, 73, 87, and 101.

> In particular, despite having knowledge of the . . . patent, Defendants have provided, and continue to provide, instructional materials, such as user guides, owner manuals, and similar online resources (available via http://www.samsung.com/us/support/, for instance) that specifically teach the customers and other end users to use the [accused products] in an infringing manner. By providing

3

> such instructions, Defendants know (and have known), or should know (and should have known), that their actions have, and continue to, actively induce infringement.

FAC ¶¶ 38, 74, 88, and 102.

> Additionally, Defendants named in this Count know, and have known, that the [accused products] include proprietary hardware components and software instructions that work in concert to perform specific, intended functions. Such specific, intended functions, carried out by these hardware and software combinations, are a material part of the inventions of the . . . patent and are not staple articles of commerce suitable for substantial non-infringing use.

FAC ¶¶ 39, 75, 89, and 103.

### B. Willful Infringement

CCE's allegations of willful infringement of the '9923, '820, '019, '174, '786, and '872 Patents similarly consist of mere boilerplate language:

> . . . Defendant is a 3rd Generation Partnership Project (or "3GPP") member organization, or is affiliated with a 3GPP member organization. 3GPP solicits identification of standard essential patents, and, through 3GPP, Defendants received actual notice of the standard essential patents at issue here. The . . . patent is one such patent, and Defendants have known of the . . . patent at least as early as . . . , when it was disclosed to 3GPP via the European Telecommunications Standards Institute ("ETSI," an organizational member of 3GPP).

FAC ¶¶ 25, 36, 51, 72, 86, and 100.

> On information and belief, despite having knowledge of the . . . patent and knowledge that they are . . . infringing one or more claims of the . . . patent, Defendants named in this Count have nevertheless continued their infringing conduct and disregarded an objectively high likelihood of infringement; thus, Defendants' infringing activities relative to the . . . patent have been, and continue to be, willful, wanton and deliberate in disregard of CCE's rights.

FAC ¶¶ 26, 40, 52, 76, 90, and 104.

### C. Defendants' Alleged Knowledge of the Patents

Each of CCE's claims of indirect and willful infringement for a particular patent relies on the allegation that Defendants had knowledge of that patent before CCE filed this lawsuit. However, with respect to four of the asserted patents, CCE asserts that Defendants knew of the patents *years before they issued*. For example, the '786 Patent did not issue until February 4, 2014. Yet, CCE alleges that "Defendants have known of the '786 patent at least as early as August 2010, when it was disclosed to 3GPP via the European Telecommunications Standards Institute[.]" FAC ¶ 86. As shown in the chart below, CCE's allegations for four of the patents are factually impossible and do not establish any requisite knowledge of the claims as issued.

|  | Date CCE Alleges Defendants Had Knowledge of Patent | Patent Issue Date |
|---|---|---|
| '820 Patent | June 2009 (FAC ¶ 36) | November 8, 2011 |
| '174 Patent | August 2010 (FAC ¶ 72) | May 10, 2011 |
| '786 Patent | August 2010 (FAC ¶ 86) | February 4, 2014 |
| '872 Patent | September 2009 (FAC ¶ 100) | August 28, 2012 |

### III. LEGAL STANDARD

Dismissal is appropriate under Fed. R. Civ. P. 12(b)(6) when a plaintiff fails to satisfy the pleading requirements of Fed. R. Civ. P. 8(a)(2), which requires that every pleading for a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); Fed. R. Civ. P. 12(b)(6). Furthermore, claims for indirect infringement are required to meet the pleading threshold governed by the Supreme Court's holdings in *Twombly* and *Iqbal*. *In re Bill of Lading Transmission and Processing System Patent Lit.*, 681 F.3d 1323, 1336–37 (Fed. Cir. 2012), citing *Bell Atlantic Corp., v. Twombly,* 550 U.S. 544 (2007) and *Ashcroft v. Iqbal,* 556 U.S. 662 (2009). Claims for willful infringement are also

subject to this pleading threshold.  *FuzzySharp Technologies Inc. v. Nvidia Corp.*, 12-CV-06375-JST, 2013 WL 4766877, at *2 (N.D. Cal. Sept. 4, 2013).

Under the *Twombly* and *Iqbal* analysis, there are two steps in determining whether a pleading is sufficient.  *See Iqbal*, 556 U.S. at 679.  *First*, a court identifies the allegations that are not entitled to the presumption of truth, which includes any allegations that are "bare assertions," merely "formulaic recitation[s] of elements," or "conclusory."  *Id.* at 679–81.  *Second*, a court examines the remaining "factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief."  *Id.* at 681.  To demonstrate plausibility, a plaintiff must go beyond pleading facts that, when assumed to be true, are "merely consistent with a defendant's liability," and must instead plead facts sufficient to permit the "reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556) (quotations omitted).  A complaint will not suffice if it "tenders 'naked assertions' devoid of 'further factual enhancement.'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).  Merely pleading the "bare elements of [a] cause of action" will result in dismissal.  *Id.* at 686.

## IV.  ARGUMENT

### A.  The Indirect Infringement Claims Should Be Dismissed

Indirect infringement includes induced infringement and contributory infringement. Pleadings for such claims must comply with the requirements articulated in *Twombly* and *Iqbal*. *Bill of Lading*, 681 F.3d at 1336–37.

#### 1.  CCE's FAC Fails to Plead a Claim for Induced Infringement

For a claim of induced infringement to survive a motion to dismiss, the complaint must: (1) adequately plead direct infringement, (2) contain facts plausibly showing that the accused infringer specifically intended for that third party to infringe the asserted patents, and (3) contain facts plausibly showing that the accused infringer knew that the third party's acts constituted

6

infringement. *Achates Reference Publ., Inc. v. Symantec Corp.*, No. 2:11-cv-294-JRG-RSP, 2013 U.S. Dist. LEXIS 27143, at *10 (E.D. Tex. Jan. 10, 2013) (citing *Bill of Lading*, 681 F.3d at 1339). CCE fails to adequately plead any of the three elements.

*First*, as to element 1, CCE failed to adequately plead the underlying direct infringement required to support a claim for induced infringement. As the Supreme Court recently made clear in *Limelight Networks, Inc. v. Akamai Techs., Inc.*, liability for inducement must be predicated on direct infringement by a single entity. *Id.*, 134 S. Ct. 2111, __ U.S. __ (2014). Here, CCE fails to allege that each step of any asserted claim is performed by a single entity. CCE simply alleges that "persons who acquire and use such devices, including Defendants' customers . . . use such devices in a manner that infringes the . . . patent." FAC ¶¶ 37, 73, 87, and 101. But a mere allegation that ***persons*** use devices ***in a manner*** that infringes is devoid of any factual support as to a single entity performing each and every step of an asserted claim. Thus, CCE's conclusory statement fails to sufficiently allege the requisite underlying direct infringement to support its claim for induced infringement.

*Second,* as to element 2, CCE does not plead sufficient facts to support the Defendants' specific intent for a third party to infringe. CCE's allegations regarding inducement state that Defendants "specifically intend for persons . . . to use [the accused] devices in a manner that infringes" the asserted patents because "[d]efendants have provided, and continue to provide, instructional materials, such as user guides, owner manuals, and similar online resources . . . that specifically teach the customers and other end users to use the [accused devices] in an infringing manner." FAC ¶¶ 37-38, 73-74, 87-88, and 101-102. But this conclusory statement is insufficient to support an induced infringement claim. *See U.S. Ethernet Innovations, LLC v. Digi Int'l Inc.*, No. 6:12-cv-366-MHS-JDL, 2013 U.S. Dist. LEXIS 114309, at *14 (E.D. Tex. Feb. 7, 2013)

(finding that bare allegations that a defendant supplied an allegedly infringing system to its customers and provided those customers with "instructions" to utilize the system in an infringing manner are insufficient).  The FAC thus fails to adequately plead a factual basis for specific intent to induce infringement, and the inducement claims should be dismissed.

*Third*, as to element 3, CCE's allegations of pre-suit knowledge of the patents are insufficient.  CCE alleges that "each Defendant is a 3rd Generation Partnership Project (or "3GPP") member organization, or is affiliated with a 3GPP member organization . . . and Defendants have known of the [each patent] . . . when it was disclosed to 3GPP via the European Telecommunications Standards Institute ('ETSI,' an organizational member of 3GPP)."  FAC ¶¶ 36, 72, 86, and 100.  Without adequately alleging why or how the Defendants received notice of the patents disclosed to ETSI, CCE merely speculates that Defendants had knowledge of these particular patents.  And, as discussed above, CCE's allegations – that Defendants knew about each of these four patents before they issued – are factually impossible.  *See supra* Section II(C).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  *Iqbal*, 556 U.S. at 679 (citing Fed. R. Civ. P. 8(a)(2)); *see Rembrandt Soc. Media, LP v. Facebook, Inc.*, No. 1:13cv158, 2013 WL 2950342, at *5 (E.D. Va. June 12, 2013) (where the allegations do not "give[] rise to anything more than a conceivable possibility of knowledge of the . . . patent, rather than a plausible inference that [Defendant] possessed such knowledge . . . the claims for indirect infringement based upon pre-suit knowledge must be dismissed."); *Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2068–71 (induced infringement requires actual knowledge of the patent; constructive knowledge is insufficient); *Commil USA, LLC v. Cisco Sys., Inc.*, 720 F.3d 1361, 1367 (Fed. Cir. 2013) (same).  Moreover, even if

Defendants were aware of the patent *application* by the alleged date, there is no allegation that Defendants knew the application ever issued as a patent, let alone a patent with claims in the same form as those at the time of alleged disclosure.

*Furthermore,* as to element 3, the FAC fails to allege facts plausibly showing that Defendants knew that the third party's acts constituted infringement. "[T]he knowledge requirement for inducement refers to the inducer's knowledge of the induced **third party's infringing acts**, not knowledge of an inducer's own inducing conduct." *Compound Photonics, LTD v. Sony Corp.*, No. 6:11-cv-552-LED-JDL, (E.D. Tex. June 5, 2013) (ECF No. 74) (emphasis added); *see also Global-Tech Appliances, Inc. v. SEB S.A.*, 131 S. Ct. 2060, 2068 (2011) ("[I]nduced infringement under § 271(b) requires knowledge that the induced acts constitute patent infringement."). CCE's allegations are limited to the conclusory recital of elements, which fail to allege any facts plausibly showing that Defendants knew that any third party's act constituted infringement.

Having failed to sufficiently allege facts as to underlying direct infringement, Defendants' specific intent *and* Defendants' knowledge of the patents or alleged third-party infringement, CCE's claim for induced infringement of the '820, '174, '786 and '872 Patents should be dismissed.

### 2. CCE's FAC Fails to Plead a Claim for Contributory Infringement

Contributory infringement requires the sale, or offer for sale, of "a component of a patented machine . . ., or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use . . . ." 35 U.S.C. § 271(c). Thus, a patent owner must establish: "1) that there is direct infringement, 2) that the accused infringer had knowledge of the patent, 3)

that the component has no substantial noninfringing uses, and 4) that the component is a material part of the invention." *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010).

CCE fails to meet each of these requirements for pleading contributory infringement. *First*, CCE insufficiently alleges direct infringement by a third party, as with induced infringement. *See supra* Section IV(A)(1). *Second,* CCE alleges only the speculative *possibility* of pre-suit knowledge of the patents based on disclosure to ETSI. *See id.* Indeed, these allegations are factually impossible based on the alleged dates of disclosure. *See supra* Section II(C). *Third* and *fourth*, CCE alleges *no* facts to support that the accused products have no substantial non-infringing use or that they are a material part of the invention. At the pleading stage, "a plaintiff must, among other things, plead facts that allow an inference that the components . . . have no substantial non-infringing uses." *Bill of Lading,* 681 F.3d at 1337. "[T]he inquiry focuses on whether the accused products can be used for purposes other than infringement." *Id.* at 1338. A claim for contributory infringement that "does not identify the components used in the infringing method" and does not "allege any facts adequate for the Court to find an inference that such components have no substantial non-infringing uses" must be dismissed. *InMotion Imagery Techs. v. Brain Damage Films*, No. 2:11-CV-414-JRG, 2012 WL 3283371, at *4 (E.D. Tex. Aug. 10, 2012). CCE's FAC not only fails to identify the *particular* components allegedly used in an infringing method, as required; the FAC does not even definitely allege *any* components were a material part of the inventions of the asserted patents. Instead CCE ambiguously alleges that "specific, intended functions, carried out by . . . hardware and software combinations, are a material part of the inventions[.]" FAC ¶¶ 39, 75, 89, and 103. CCE's bare recital of the contributory infringement elements is wholly conclusory and "not entitled to the assumption of the truth." *Iqbal*, 556 U.S. at 608.

Yet, even if presumed true, CCE's conclusory statements should be negated as highly implausible as a matter of "common sense." *Id*. at 679. The accused devices—like all modern smartphones and tablet computers—obviously have a wide variety of non-infringing uses, and CCE has alleged nothing to overcome that common sense fact. What's more, CCE's own allegations create the inference that the accused products have substantial non-infringing uses, when it alleges that Defendants provide *instructions* on how the accused products are to be used in an infringing matter. *Digi*, 2013 U.S. Dist. LEXIS 114309, at *14 (dismissing a contributory infringement claim because "[plaintiff]'s allegation that customers infringe when they use operating systems and components in accordance with [defendant]'s *instructions* actually creates an inference that [the accused products] might otherwise be used in a non-infringing manner") (emphasis added).

For the reasons stated above, CCE's contributory infringement claims as to the '820, '174, '786, and '870 Patents should also be dismissed.

### B. The Willful Infringement Claims Should Be Dismissed

To support a willfulness claim, a plaintiff must, at a minimum, establish two separate and independent elements: (1) objectively reckless behavior or circumstances, and (2) subjective knowledge or obviousness of the risk. *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007). A willful infringement claim must be based on "particular facts" that demonstrate the basis for that allegation. *InMotion Imagery Techs.,* 2012 WL 3283371, at *4. "[W]hen a complaint is filed, a patentee must have a good faith basis for alleging willful infringement." *Seagate*, 497 F.3d at 1374. "So a willfulness claim asserted in the original complaint must necessarily be grounded exclusively in the accused infringer's pre-filing conduct." *Id.*

CCE's willful infringement allegations here (FAC ¶¶ 26, 40, 52, 76, 90, and 104) are nothing more than a recitation of the willful infringement standard, which is insufficient to sustain

11

a claim.  *See, e.g.*, *Touchscreen Gestures LLC v. RIM Ltd.*, No. 6:12-cv-263, 2013 U.S. Dist. LEXIS 97080, at *5 (E.D. Tex. Mar. 27, 2013) (finding "an allegation, absent any supporting facts, insufficient to establish a willful infringement claim"); *Oasis Research, LLC v. Adrive, LLC*, No. 4:10-cv-435, 2011 U.S. Dist. LEXIS 80483, at *14–*15 (E.D. Tex. May 23, 2011) (dismissing willful infringement claims despite allegations of pre-suit knowledge because willful infringement claims were "conclusory").

*First*, CCE's allegation that Defendants "continued their infringing conduct and disregarded an objectively high likelihood of infringement" (FAC ¶¶ 26, 40, 52, 76, and 104), is a bare legal conclusion of the type expressly prohibited by *Iqbal*.  CCE fails to identify, explain, or allege any factual basis for the required "objectively high likelihood of infringement," and thus the claim is "insufficient to establish a willful infringement claim." *Touchscreen Gestures,* 2013 U.S. Dist. LEXIS 97080, at *5.

*Second*, CCE similarly fails to allege that Defendants had the requisite subjective knowledge of the obviousness of the risk, whatever it might have been.  CCE's basis for alleging willfulness cannot be pre-suit knowledge of the asserted patents, because CCE insufficiently alleges only the speculative *possibility* of pre-suit knowledge of the '9923, '820, '019, '174, 786, and '872 Patents based on disclosure of the patents to ETSI.  FAC ¶¶ 25, 36, 51, 72, 86, and 100; *see also supra* Section IV(A)(1).  These allegations are in fact impossible with respect to the '820, '174, '786, and '872 Patents based on the alleged dates of disclosure.  *See supra* Section II(C).

It is impossible to speculate further what the basis for CCE's willfulness claim could be, which is precisely why the claim should be dismissed.  CCE's allegations are insufficient to put Defendants on notice of the bases for its claims of willful infringement.  CCE's tacked-on willful

12

infringement claim is merely "a formulaic recitation of the elements of a cause of action." *Iqbal*, 556 U.S. at 678. For the reasons stated above, it should also be dismissed.

## V. CONCLUSION

Defendants respectfully request that the Court dismiss CCE's claims of indirect (both inducement and contributory infringement) and willful infringement for failure to state a claim upon which relief may be granted.

Dated: January 15, 2015          Respectfully submitted,

/s/ Christopher W. Kennerly
Christopher W. Kennerly
TX Bar No. 00795077
chriskennerly@paulhastings.com
Jeffrey G. Randall
CA Bar No. 130811
jeffrandall@paulhastings.com
PAUL HASTINGS LLP
1117 S. California Ave.
Palo Alto, CA 94304-1106
Telephone: (650) 320-1800
Facsimile: (650) 320-1900

Jeffrey D. Comeau
CA Bar No. 259679
jeffreycomeau@paulhastings.com
PAUL HASTINGS LLP
4747 Executive Drive
Twelfth Floor
San Diego, CA 92121-3114
Telephone: (858) 458-3000
Facsimile: (858) 458-3005

Trey Yarbrough
TX Bar No. 22133500
trey@yw-lawfirm.com
YARBROUGH WILCOX, PLLC
100 E. Ferguson St., Suite 1015
Tyler, Texas 75702
Telephone (903) 595-3111
Facsimile (903) 595-019

**Attorneys for AT&T Mobility LLC**

/s/ Michael E. Jones
Michael E. Jones
State Bar No. 10929400
Patrick C. Clutter, IV
State Bar No. 24036374
mikejones@potterminton.com
patrickclutter@potterminton.com
POTTER MINTON, P.C.
110 N. College Ave., Suite 500
Tyler, Texas 75702

Tel: (903) 597-8311
Fax: (903) 593-0846

Charles B. Molster, III
Virginia State Bar No. 23613
Thomas M. Dunham
D.C. Bar No. 448407
Corrine M. Saylor
D.C. Bar No. 997638 (*Pro Hac Vice*)
cmolster@winston.com
tdunham@winston.com
csaylor@winston.com
WINSTON &STRAWN LLP
1700 K Street, N.W.
Washington, D.C. 20006-3817
Tel: (202) 282-5000
Fax: (202) 282-5100

Sarah J. Kalemeris
IL Bar No. 6303644
WINSTON &STRAWN LLP
35 W Wacker Drive
Chicago, IL 60601
Telephone: 312-558-5600
Fax: 312-558-5700
skalemeris@winston.com

**Attorneys for Cellco Partnership d/b/a/ Verizon Wireless**

/s/ Robert W. Weber
Robert W. Weber
Texas State Bar No. 21044800
SMITH WEBER, L.L.P.
5505 Plaza Drive
P.O. Box 6167
Texarkana, TX 75505-6167
Tele: (903) 223-5656
Fax: (903) 223-5652
Email: bweber@smithweber.com

Mark W. McGrory (*pro hac vice*)
ROUSE HENDRICKS GERMAN MAY PC
1201 Walnut, 20th Floor
Kansas City, MO 64106

Tel: (816) 471-7700
Fax: (816) 471-2221
Email: MarkM@rhgm.com

**Attorneys for Sprint Solutions, Inc., Sprint Spectrum L.P., and Boost Mobile, LLC**


/s/ Melissa R. Smith
Melissa R. Smith
State Bar No. 24001351
GILLAM & SMITH, LLP
303 S. Washington Ave.
Marshall, TX 75670
Phone: (903) 934-8450
Fax: (903) 934-9257
melissa@gillamsmithlaw.com

Douglas J. Dixon
HUESTON HENNIGAN LLP
620 Newport Center Dr., Ste. 1300
Newport Beach, CA 92660
Phone: (949) 226-6741

JHueston@hueston.com
DDixon@hueston.com

**Attorneys for T-Mobile USA, Inc. and T-Mobile US, Inc.**


By: */s/ Michael E. Jones*

    Kevin Johnson
    kevinjohnson@quinnemanuel.com
    Victoria Maroulis
    victoriamaroulis@quinnemanuel.com
    Ray Zado
    rayzado@quinnemanuel.com
    **QUINN EMANUEL URQUHART & SULLIVAN LLP**
    555 Twin Dolphin Drive, 5th Floor
    Redwood Shores, CA 94065
    Tel: 650-801-5000
    Fax: 650-801-5100

    Marissa Ducca
    marissaducca@quinnemanuel.com

**QUINN EMANUEL URQUHART & SULLIVAN LLP**
777 6th Street NW, 11th Floor
Washington, D.C. 20009
Tel: 202-538-8109
Fax: 202-538-8100

Michael E. Jones
State Bar No. 10929400
mikejones@potterminton.com
Allen F. Gardner
State Bar No. 24043679
allengardner@potterminton.com
**POTTER MINTON**
A Professional Corporation
110 N. College, Suite 500
Tyler, Texas 75702
Tel: (903) 597-8311
Fax: (903) 593-0846

**Attorneys for Samsung Electronics CO., Ltd.; Samsung Electronics America, Inc.; and Samsung Telecommunications America, LLC**

## **CERTIFICATE OF SERVICE**

      I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5 on this 15th day of January, 2015.  As of this date all counsel of record have consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A).

                              /s/ Christopher W. Kennerly
                              Christopher W. Kennerly