**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | |
|---|---|
| CELLULAR COMMUNICATIONS EQUIPMENT LLC, | |
| Plaintiff, | |
| v. | Civil Action No. 6:14-cv-759-KNM |
| SAMSUNG ELECTRONICS CO., LTD., et al., | |
| Defendants. | |

## DEFENDANTS' SUR-REPLY BRIEF ON CLAIM CONSTRUCTION

Defendants[1] submit this sur-reply brief addressing indefiniteness issues.  (*See* Dkt. 137.)

### A.    U.S. Patent No. 8,254,872

#### 1.    The Disclosed "Terminal" Does Not Disclose Sufficient Structure

Realizing the shortcomings in its prior argument, Plaintiff now contends the disclosed structure for each of the three means-plus-function terms is not just the nondescript "terminal" described within the specification, but rather a "mobile terminal configured for an IP multimedia subsystem." (Dkt. 142 at 10.)  This terminal, according to Plaintiff, is additionally "configured to support the protocols related to IMS." (*Id.*)  Plaintiff's new argument fails for several reasons.

*First*, the specification never describes—or even suggests—that the disclosed "terminal" is a "mobile terminal" or must support IMS protocols.  Rather, the specification merely references a single 3GPP technical specification related to IMS in the background section.  ('872 patent at 1:16-26.)  The *sparse two columns of description* never again mention the 3GPP specification or how the disclosed terminal is related to this technical specification.

*Second*, even if the disclosed terminal were required to support IMS, that is also not disclosed in the specification and therefore cannot be part of the structure.  *See Atmel Corp. v. Information Storage Devices, Inc.,* 198 F.3d 1374, 1381-82 (Fed. Cir. 1999).  At best, the specification merely describes a generic "black box" terminal performing IMS registration without any discussion of the underlying structure.  (Dkt. 138-1 at ¶¶ 49, 50, 54, 57.)

*Third*, even if some structure were implied by the terminal's support of IMS protocols, there would still not be any "clear link" or association between the structure and the claimed functions of "receiving…," "comparing…," and "setting up…," as required to avoid invalidity.  *See Medtronic, Inc. v. Advance Cardiovascular Sys., Inc.*, 248 F.3d 1303, 1312 (Fed. Cir. 2001).

Plaintiff's cases support Defendants' position.  Each of *Typhoon Touch*, *Intel*, and *Biomedino* stand for the proposition that some level of *actual detail or disclosure* within the

---

[1]  This brief is filed on behalf of Samsung Electronics, Co. Ltd, Samsung Electronics America, Inc., AT&T Mobility LLC, Cellco Partnership d/b/a Verizon Wireless, Sprint Solutions, Inc., Sprint Spectrum L.P., Boost Mobile, LLC, T-Mobile USA, Inc., and T-Mobile US, Inc. ("Defendants"). Each Defendant joins the brief only with respect to the claims asserted against it.

specification is required to satisfy § 112, ¶ 6.  The *Biomedino* court explained that the "structure supporting a means-plus-function claim under § 112, ¶ 6 *must appear in the specification*." *Biomedino, LLC v. Waters Techs. Corp*., 490 F.3d 946, 952 (Fed. Cir. 2007) (emphasis added). In addition, "consideration of the understanding of one skilled in the art *in no way relieves* the patentee of adequately disclosing sufficient structure in the specification." *Id.* Here, Plaintiff attempts to abrogate its responsibility to adequately disclose the structure in the specification by relying on the knowledge of one of ordinary skill in the art.  However, knowledge of one of ordinary skill in the art cannot supplant a lack of disclosure in the specification.  *Id.*; *Aristocrat Techs. Austl. PTY Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1337 (Fed. Cir. 2008) ("It is not enough for the patentee simply to state or later argue that persons of ordinary skill in the art would know what structures to use to accomplish the claimed function.").

## 2. The Other '872 Patent Terms Invoke § 112, ¶ 6 and Are Indefinite

The terms "receiver," "comparator," and "connection unit" are "nonce" substitutes for the three terms above that Plaintiff *agrees* are means-plus-function terms.  Plaintiff's only argument is that each of these terms "conveys structure to a skilled artisan" and is a "well-known component" of an "IMS-capable mobile terminal."  (Dkt. 142 at 12-16.)  Plaintiff's argument fails, however, because there is no description at all within the specification of the '872 patent that the disclosed "terminal" is a mobile terminal, let alone a "IMS-capable mobile terminal." Moreover, one of ordinary skill in the art would not understand these terms to connote *any* definite structure.  (Dkt. 138-1 at ¶¶ 61-63.)  Plaintiff's attempt to tie the claimed "receiver" to other components within the terminal (Dkt. 142 at 13) is mere speculation neither disclosed nor described within the specification.  Similarly, there is no basis for Plaintiff's attempt to limit the claimed "comparator" to "discrete logic" or the claimed "connection unit" to a "SIP client." (Dkt. 142 at 13-14.)  Rather, these "nonce" words operate as a substitute for "means" and are indefinite.[2]  *See Williamson v. Citrix Online, LLC,* 792 F.3d 1339, 1350 (Fed. Cir. 2015).

---

[2]  Plaintiff's invocation of *E2E Processing* and *Smartflash* misses the mark.  In *E2E Processing*, there was "sufficient context" within the specification itself such that certain prefixes imparted

### B.      U.S. Patent No. 8,645,786

Defendants identified three reasons the term "self decodable rate matching patterns" is indefinite: (1) it is a coined technical term that has no understood meaning in the art; (2) a literal combination of the definitions of "self decodable" and "rate matching pattern" results in a nonsensical construction; and (3) the intrinsic record teaches away from any connection between the sub-terms, and conflicts with Plaintiff's interpretation.  (Dkt. 138 at 22-23; *see also* Dkt. 138-1 ¶¶ 66-75.)  Plaintiff does not dispute bases (1) and (2), and focuses only on (3).

Plaintiff attempts to contrive a non-literal relationship between the sub-terms "self decodable" and "rate matching pattern," based on the '786 patent's statement that the rate matching ***stage*** depends on the parameter *s* (which determines self decodability).  (Dkt. 142 at 6-7 (*citing* '786 patent at 8:39-52).)  Yet, the '786 patent distinguishes between the "rate matching ***stage***" and Claim 1's "rate matching ***pattern***."  ('786 patent at 8:21-52; *see also* Dkt. 138-1 ¶¶ 67-68.)  The rate matching ***stage*** incorporates determining whether a redundancy version will be self-decodable, and then applying the rate matching ***pattern***.  The parameter *s* thus makes sense in the context of the broader "stage," but there is no way to apply the parameter to the "pattern." (Dkt. 138 at 23.)

Moreover, Plaintiff's argument is contradicted by the patentee's express statement that the rate matching pattern is "based on" the parameter *r* (Ex. 1, Sept. 19, 2013 Office Action Resp. at 11), and Plaintiff's new interpretation that "based on" does not mean "exclusively determined by," (Dkt. 142 at 7 n.2), is also contradicted.  Claim 1 requires that the rate matching pattern of the second retransmission (step (d)) is "the same as the further rate matching pattern used in the second data packet."  During prosecution, the Examiner rejected this element as lacking written description under § 112(1).  (Ex. 2, Mar. 19, 2013 Office Action at 2.)  The patentee responded that "[t]his is described by tables 1 and 2" and that:

---

"sufficient structural meaning" to the nonce term "component."  *E2E Processing, Inc. v. Cabela's Inc.*, 2015 U.S. Dist. LEXIS 86060 as *22-24  (E.D. Tex. July 2, 2015).  In *Smartflash*, the terms included "substantial additional language" describing the operation of the components"—which is completely absent here.  *Smartflash LLC v. Apple Inc.*, 2015 U.S. Dist. LEXIS 91669 at *9-11 (E.D. Tex. July 6, 2015).

> [C]laim 15 requires … selecting a rate matching pattern … using the redundancy version parameter, which rate matching pattern (which is ***based on the rate matching parameter r of Table 1***) is different from the first rate matching pattern used in the first data packet and the same as the further rate matching pattern used in the second data packet. Thus, ***although the RV Index may be different for the first and second transmissions, the "r" value in Table 1 corresponding to those RV Index numbers of Table 2 may be the same***. For example, for the two different RV Index numbers 2 and 3, the rate matching parameter r of Table 1 is, in both cases, r=1. ***<u>Thus, the second and third data packets can absolutely have different RSV Indexes, but still have the same rate matching pattern (based on the same rate matching parameter r = 1 of Table 1)</u>***, as shown in connection with Tables 1 and 2.

(Ex. 1, Sept. 19, 2013 Office Action Resp. at 9, 11 (different emphasis shown).)  The RV (or RSV) Index depends on both *s* and *r*, as shown in Table 1.  ('786 patent at 8:1-9.)  If, as Plaintiff argues, the rate matching ***pattern*** also depends on these two parameters, then it is ***impossible*** to have a situation in which the RV Index is changed but the rate matching parameter is not, in direct contrast to the patentee's underlined statement above.  Plaintiff's expert confirms that under Plaintiff's interpretation, "a change in the value of parameter *s* will result in a different rate matching pattern." (Dkt. 138-1 at ¶ 73.)  Thus, Plaintiff's interpretation directly contradicts the patentee's statement and ignores this argument that was critical in overcoming the rejection.

## C.    U.S. Patent No. 8,055,820

Plaintiff alleges the "network device" designates the structure of "a base station."  (Dkt. 142 at 3.)  The patentee, however, did not claim a "base station," but rather claimed a "nonce" "network device."  The patentees knew the difference between a "network device" and a "base station," as the specification treats these two terms differently.  (Dkt. 131-1 at 8:44-47.)

Plaintiff's argument that the claims do not recite a function for the "network device" is also misplaced.  The claims plainly require communication of the buffer status report to the network device, which receives the report.  This interpretation is also consistent with all the described embodiments.[3]  (*See, e.g.,* '820 patent at 5:40-42.)  As there is no "clear link" between

---

[3]  *Lodsys*, which was decided before *Williamson*, does not save this term.  Although the word "means" is not used, a "network device" does not connote any particular structure and is a "nonce" term subject to § 112, ¶ 6.  (Dkt. 138-1 at ¶¶ 82-85; *Williamson,* 792 F.3d at 1350.)

the base station and the recited function and the "nonce" term network device connotes no sufficiently definite structure, this term is indefinite.  (Dkt. 138-1 at ¶¶ 82-85.)

### D.      U.S. Patent No. 7,218,923

Plaintiff alleges the term "controlling entity" has definite meaning for some, undefined "control software residing in the claimed terminal."  (Dkt. 142 at 17.)  Even if this were true, the term would still be indefinite because "control software" is "a generic description for software or hardware that performs a specified function" and the specification provides no structural detail or algorithm for this software.  (Dkt. 138-1 at ¶ 90.)

While the specification does give examples of a "dedicated software agent" or a modified "DRM agent," these merely take the form of a nondescript "black box," which is insufficient to meet the strictures of §112, ¶ 6.  *See Williamson*, 792 F.3d at 1350-51.  Moreover, the specification does not provide ***any*** detail or description as to how the DRM agent is modified in order to support the recited function of the "controlling entity."  (Dkt. 138-1 at ¶ 92.)

Plaintiff relies on inapposite case law to contend that no algorithm is necessary because the trusted agent is a "specific software structure rather than a general-purpose computer."  (Dkt. 142 at 19.)  In *Mobile Telcoms. Techs.*, however, the linked structures were physical displays, receivers, and storage logic—not abstract software.  *Mobile Telcoms. Techs., LLC v. LG Elecs. Mobilecomm USA, Inc.*, 2015 U.S. Dist. LEXIS 62392 at *50-51 (E.D. Tex. May 12, 2015).  In *Typhoon Touch*, a "four-step algorithm" was described in the specification, but not in detailed computer code form.  *Typhoon Touch Techs., Inc. v. Dell, Inc.*, 659 F.3d 1376, 1385 (Fed. Cir. 2011).  Here, the '8923 patent doesn't provide ***any*** details of ***how*** the trusted agent is structured or any specific algorithm.  At best, Plaintiff can point only to a description of the ***final result*** of the algorithm, but no details of the actual algorithm are disclosed.  (Dkt. 138-1 at ¶ 92.)

For the foregoing reasons, each of the terms described above are indefinite.

5

DATED:  November 20, 2015

Respectfully submitted,

*/s/ Michael E. Jones*
Michael E. Jones
State Bar No. 10929400
Patrick C. Clutter, IV
State Bar No. 24036374
mikejones@potterminton.com
patrickclutter@potterminton.com
Potter Minton, P.C.
110 N. College Ave., Suite 500
Tyler, Texas 75702
Tel: (903) 597-8311
Fax: (903) 593-0846

Charles B. Molster, III
Virginia State Bar No. 23613
Thomas M. Dunham
D.C. Bar No. 448407
Corrine M. Saylor
D.C. Bar No. 997638 (*Pro Hac Vice*)
cmolster@winston.com
tdunham@winston.com
csaylor@winston.com
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C. 20006-3817
Tel: (202) 282-5000
Fax: (202) 282-5100

Sarah J. Kalemeris
IL Bar No. 6303644
skalemeris@winston.com
WINSTON & STRAWN LLP
35 W Wacker Drive
Chicago, IL 60601
Tel: (312) 558-5600
Fax: (312) 558-5700

**ATTORNEYS FOR CELLCO
PARTNERSHIP D/B/A/ VERIZON
WIRELESS**

*/s/ Michael E. Jones*
Kevin Johnson
kevinjohnson@quinnemanuel.com
Victoria Maroulis
victoriamaroulis@quinnemanuel.com
Ray Zado
rayzado@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
555 Twin Dolphin Dr., 5th Floor
Redwood Shores, CA 94065
Tel: 650-801-5000
Fax: 650-801-5100

Marissa Ducca
Deepa Acharya
marissaducca@quinnemanuel.com
deepaacharya@quinnemanuel.com
QUINN EMANUEL URQUHART &
SULLIVAN LLP
777 6th Street NW, 11th Floor
Washington, D.C. 20009
Tel: 202-538-8109
Fax: 202-538-8100

Michael E. Jones
State Bar No. 10929400
mikejones@potterminton.com
Allen F. Gardner
State Bar No. 24043679
allengardner@potterminton.com
POTTER MINTON
A Professional Corporation
110 N. College, Suite 500
Tyler, Texas 75702
Tel: (903) 597-8311
Fax: (903) 593-0846

**ATTORNEYS FOR SAMSUNG
ELECTRONICS CO., LTD. AND
SAMSUNG ELECTRONICS AMERICA,
INC.**

*/s/ Caroline A. Bader*
Mark McGrory (*pro hac vice*)
Megan J. Redmond (*pro hac vice*)
Carrie A. Bader (*pro hac vice*)
ERISE IP
6201 College Boulevard, Suite 300
Overland Park, KS 66211
Office: 913-777-5600
Fax: 913-777-5601
Mark.mcgrory@eriseip.com
Megan.redmond@eriseip.com
Carrie.bader@eriseip.com

Robert W. Weber
Texas State Bar No. 21044800
SMITH WEBER, L.L.P.
5505 Plaza Drive
P.O. Box 6167
Texarkana, TX 75505-6167
Tele: (903) 223-5656
Fax: (903) 223-5652
Email: bweber@smithweber.com

Mark W. McGrory (*pro hac vice*)
Erise IP, P.A.
6201 College Blvd, Ste 300
Overland Park, KS  66211
(913) 777-5600
(913) 777-5601 - fax
mark.mcgrory@eriseip.com

**ATTORNEYS FOR SPRINT
SOLUTIONS, INC., SPRINT
SPECTRUM L.P., AND BOOST
MOBILE, LLC**

*/s/ Melissa R. Smith*
Melissa R. Smith
State Bar No. 24001351
GILLAM & SMITH, LLP
303 S. Washington Ave.
Marshall, TX 75670
Phone: (903) 934-8450
Fax: (903) 934-9257
melissa@gillamsmithlaw.com

*/s/ Christopher W. Kennerly*
Christopher W. Kennerly
TX Bar No. 00795077
chriskennerly@paulhastings.com
Jonas P. Herrell
CA Bar No. 279075
jonasherrell@paulhastings.com
PAUL HASTINGS LLP
1117 S. California Ave.
Palo Alto, CA  94304-1106
Telephone: (650) 320-1800
Facsimile: (650) 320-1900

Jeffrey D. Comeau
CA Bar No. 259679
jeffreycomeau@paulhastings.com
PAUL HASTINGS LLP
4747 Executive Drive
Twelfth Floor
San Diego, CA 92121-3114
Telephone: (858) 458-3000
Facsimile: (858) 458-3005

Trey Yarbrough
TX Bar No. 22133500
trey@yw-lawfirm.com
YARBROUGH WILCOX, PLLC
100 E. Ferguson St., Suite 1015
Tyler, Texas 75702
Telephone (903) 595-3111
Facsimile (903) 595-019

**ATTORNEYS FOR AT&T MOBILITY
LLC**

John C. Hueston
Alex C. D. Giza
Douglas J. Dixon
HUESTON HENNIGAN LLP
620 Newport Center Dr., Ste. 1300
Newport Beach, CA 92660
Phone: (949) 229-8640
JHueston@hueston.com
AGiza@hueston.com
DDixon@hueston.com

**ATTORNEYS FOR T-MOBILE USA,
INC. AND T-MOBILE US, INC.**

**CERTIFICATE OF SERVICE**

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on the 20th day of November, 2015 per Local Rule CV-5(a)(3).

*/s/ Michael E. Jones*