# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| CELLULAR COMMUNICATIONS EQUILMENT LLC,<br><br>    Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., et al.,<br><br>    Defendants. | Civil Action No. 6:14-cv-759-KNM |

## DEFENDANTS' SUPPLEMENTAL BRIEF ON CLAIM CONSTRUCTION

Pursuant to the Court's Order (Dkt. 170, p. 2), Defendants submit this supplemental brief addressing the "controlling" and "controlling entity" limitations of the '8923 patent.

## I. THE "CONTROLLING ENTITY" AND "DIVERTING UNIT" MUST BE SEPARATE COMPONENTS

If the Court does not find the disputed "controlling" / "controlling entity" limitations of the '8923 patent indefinite, Defendants submit that the following additional constructions should apply to claims 1, 4, 24, and 26: (1) The controlling entity of claims 24 and 26 is a physically separate component from the diverting unit; and (2) The controlling step of claims 1 and 4 must be performed by a component physically separate from the component that performs the diverting step.[1] These constructions are based on the express findings of the PTAB in reliance on CCE's arguments regarding claim construction in IPR2014-01133.

In the Final Written Decision issued on Jan. 4, 2016 (Zado Dec. Ex. A), the PTAB unequivocally found, based on the claim language and specification, that the "diverting unit" and "controlling entity" of the '8923 patent must be entirely separate components, and likewise, the "diverting" and "controlling" steps must be performed by such separate components:

> The claims of the '923 patent indicate that **the diverting and controlling steps in claim 1 are performed by separate components, and that the diverting unit and controlling entity in claim 24 are separate components**. … The specification of the '923 patent **confirms that the diverting and controlling steps in claim 1 are performed by separate components, and that the diverting unit and controlling entity in claim 24 are separate components**.

Zado Dec. Ex. A, p. 8-9 (emphasis added); *see id.* at 13.

Because petitioner identified a single component for each prior art reference as both the diverting unit and controlling entity of the '8923 patent claims (an "isolator engine" in D'Aveira, and an "interception engine" in Calder[2]), the PTAB found the petitioner had not shown the challenged claims were anticipated or rendered obvious by these references. Zado Dec. Ex. A, p. 9, 13. In so doing, the PTAB expressly relied on statements made by CCE regarding the appropriate construction of the '8923 patent claims to distinguish D'Aveira and Calder: "Patent Owner argues that the diverting and controlling steps in claim 1 are performed by separate

---

[1] The parties respective constructions are set forth in the table attached hereto at Tab 1.
[2] U.K. Patent Application No. GB 2376766A (Zado Dec. Ex. B) and U.S. Patent Publication No. 2002/0065869 (Zado Dec. Ex. C), respectively.

1

components, and that the diverting unit and controlling entity in claim 24 are separate components. … We agree with Patent Owner." Zado Dec. Ex. A, p. 8; *see* Ex. D, p. 27, 29-30. CCE must therefore be bound by its statements on which the PTAB relied regarding the appropriate construction of these claim terms. *Beneficial Innovations, Inc. v. Blockdot, Inc.*, 2010 WL 2246291, at *2 (E.D. Tex. June 3, 2010); *LSI Indus., Inc. v. ImagePoint, Inc.*, 279 F. App'x 964, 969 (Fed. Cir. 2008).

### A. For Software Modules, a Single Component Includes a Collection of Related Functions; Thus, Software Modules Must Be Physically Separate

The PTAB's finding that neither the isolator engine of D'Aveira, nor the interception module of Calder, could comprise both the "diverting unit" and "controlling entity" (or perform both the "controlling" and "diverting" steps) further clarifies the requirement that the "diverting unit and controlling entity [must be] separate components." *See* Zado Dec. Ex. A, p. 8-9, 11-12. Specifically, the prior art software modules (the isolator engine / interception module, respectively), each comprised a number of different functions for accomplishing various tasks. However, even though these modules included different groups of functions, which could separately be attributed to the "diverting" and "controlling" steps of the '8923 patent claims, the PTAB found such differing groups of functions could not qualify as separate "components."

For example, Calder's interception module is a software module that performs a number of separate functions.[3] In particular, the interception module includes one collection of functions that first "intercept[s] a request from the application to output data to an output device" (or "intercept[] system calls that are made by the application program.") (Zado Dec. Ex. C, ¶¶ 7, 73); once the request or system call has been intercepted, a separate collection of functions in the interception module determines"[i]f the status is not valid for sending, [and if so] returns to the application 405 a low level error. However, if the status is valid for sending, an application provided buffer is written into the send queue." Zado Dec. Ex. C, ¶ 166; *see id*. at ¶¶ 73, 158-65. Similarly, D'Aveira's isolator engine provides separate collections of functions, including

---

[3] These functions include, *e.g*., "provid[ing] virtual allocation and de-allocation routines 425, a virtualized registry 430, a virtualized files system 435, a virtual other environment 440, a virtualized network 445, and a virtualized graphics interfaces 450." Zado Dec. Ex. C, ¶ 85.

2

"listen[ing] to a particular port number used by the application program" (Zado Dec. Ex. B, 5:3–14), and afterward, comparing the intercepted message to a file (s*ee id*. at 3:26–29, 5:15-6:6).

Relying on CCE's arguments,[4] the PTAB rejected the notion that a software module comprising collections of separate functions could act as both the controlling entity and diverting unit (or perform both the controlling and diverting steps):

> Petitioner also argues that one part of the isolator engine in D'Aviera diverts a message and another part controls the message. … Petitioner's argument is not persuasive. Petitioner describes the different functions performed by the isolator engine, but does not show that the isolator engine is two separate components.

*See* Zado Dec. Ex. A, p. 11. Thus, the PTAB required actual physical separation between components, not merely separate collections of software functions, to satisfy the '8923 claims.

In confirming this requirement, the PTAB noted that, in the first of two embodiments of the '8923 patent, a "SIP protocol stack" acts as the diverting unit, and a "trusted agent" as the controlling entity (Zado Dec. Ex. E, 2:3–10; 4:51–5:8; 6:20–26; Figs. 2, 6); in the second embodiment, a "middleware modification module" residing between the applications and the SIP protocol stack acts as the diverting unit, with the trusted agent again as the controlling entity (*id*., 6:49–61, Figs. 7, 8). *See* Zado Dec. Ex. A, p. 9-10. In all disclosed embodiments, the diverting unit and the controlling entity are described as physically separate components—with the diverting unit located outside of the tamper resistant area, and the controlling entity located inside the tamper resistant area. *See* Zado Dec. Ex. E, 1:59–60, 2:3-11; 3:57-63; 6:20–26, 49–61; 7:6–12; Figs. 2, 6–8. Thus, separate groups of software functions, in and of themselves, do not qualify as "separate components"; rather, such functions must further be physically separate to meet the '8923 patent claims. *See* Zado Dec. Ex. A, p. 10 ("Those figures also show that the trusted agent may reside in a tamper resistant area of the terminal that is ***separate from the area of the terminal*** where the SIP protocol stack and middleware modification module reside.").

---

[4] CCE argued that, as a matter of claim construction, the "diverting unit" and "diverting step" must be performed by a component that "intervenes" between the application program and the controlling entity: "[T]he plain language of independent claims 1 and 24 clearly require an intervening step of 'divert[ing]' a message to the claimed controlling entity that is performed after a message has been sent from the application program and before the message is received by the claimed controlling entity. … The Petition and Declaration fail to even identify the structure or process capable of performing this intervening step." Zado Dec. Ex. D, p. 30, 27.

3

DATED: January 19, 2016

Respectfully submitted,

| | |
|---|---|
| */s/ Sarah J. Kalemeris, with permission by Michael E. Jones* <br> Michael E. Jones <br> State Bar No. 10929400 <br> Patrick C. Clutter, IV <br> State Bar No. 24036374 <br> mikejones@potterminton.com <br> patrickclutter@potterminton.com <br> Potter Minton, P.C. <br> 110 N. College Ave., Suite 500 <br> Tyler, Texas 75702 <br> Tel: (903) 597-8311 <br> Fax: (903) 593-0846 <br><br> Charles B. Molster, III <br> Virginia State Bar No. 23613 <br> Thomas M. Dunham <br> D.C. Bar No. 448407 <br> Corrine M. Saylor <br> D.C. Bar No. 997638 (*Pro Hac Vice*) <br> cmolster@winston.com <br> tdunham@winston.com <br> csaylor@winston.com <br> WINSTON & STRAWN LLP <br> 1700 K Street, N.W. <br> Washington, D.C. 20006-3817 <br> Tel: (202) 282-5000 <br> Fax: (202) 282-5100 <br><br> Sarah J. Kalemeris <br> IL Bar No. 6303644 <br> skalemeris@winston.com <br> WINSTON & STRAWN LLP <br> 35 W Wacker Drive <br> Chicago, IL 60601 <br> Tel: (312) 558-5600 <br> Fax: (312) 558-5700 <br><br> **ATTORNEYS FOR CELLCO PARTNERSHIP D/B/A/ VERIZON WIRELESS** | */s/ Ray Zado, with permission by Michael E. Jones* <br> Kevin Johnson <br> kevinjohnson@quinnemanuel.com <br> Victoria Maroulis <br> victoriamaroulis@quinnemanuel.com <br> Ray Zado <br> rayzado@quinnemanuel.com <br> QUINN EMANUEL URQUHART & SULLIVAN LLP <br> 555 Twin Dolphin Dr., 5th Floor <br> Redwood Shores, CA 94065 <br> Tel: 650-801-5000 <br> Fax: 650-801-5100 <br><br> Marissa Ducca <br> Deepa Acharya <br> marissaducca@quinnemanuel.com <br> deepaacharya@quinnemanuel.com <br> QUINN EMANUEL URQUHART & SULLIVAN LLP <br> 777 6th Street NW, 11th Floor <br> Washington, D.C. 20009 <br> Tel: 202-538-8109 <br> Fax: 202-538-8100 <br><br> Michael E. Jones <br> State Bar No. 10929400 <br> mikejones@potterminton.com <br> Allen F. Gardner <br> State Bar No. 24043679 <br> allengardner@potterminton.com <br> POTTER MINTON <br> 110 N. College, Suite 500 <br> Tyler, Texas 75702 <br> Tel: (903) 597-8311 <br> Fax: (903) 593-0846 <br><br> **ATTORNEYS FOR SAMSUNG ELECTRONICS CO., LTD. AND SAMSUNG ELECTRONICS AMERICA, INC.** |

*/s/ Mark McGrory, with permission by Michael E. Jones*
Mark McGrory (*pro hac vice*)
Megan J. Redmond (*pro hac vice*)
Carrie A. Bader (*pro hac vice*)
ERISE IP
6201 College Boulevard, Suite 300
Overland Park, KS 66211
Office: 913-777-5600
Fax: 913-777-5601
Mark.mcgrory@eriseip.com
Megan.redmond@eriseip.com
Carrie.bader@eriseip.com

Robert W. Weber
Texas State Bar No. 21044800
SMITH WEBER, L.L.P.
5505 Plaza Drive
P.O. Box 6167
Texarkana, TX 75505-6167
Tele: (903) 223-5656
Fax: (903) 223-5652
Email: bweber@smithweber.com

Mark W. McGrory (*pro hac vice*)
Erise IP, P.A.
6201 College Blvd, Ste 300
Overland Park, KS 66211
(913) 777-5600
(913) 777-5601 - fax
mark.mcgrory@eriseip.com

**ATTORNEYS FOR SPRINT SOLUTIONS, INC., SPRINT SPECTRUM L.P., AND BOOST MOBILE, LLC**

*/s/ Zachary Elsea , with permission by Michael E. Jones*
Melissa R. Smith
State Bar No. 24001351
GILLAM & SMITH, LLP
303 S. Washington Ave.
Marshall, TX 75670

*/s/ Christopher W. Kennerly, with permission by Michael E. Jones*
Christopher W. Kennerly
TX Bar No. 00795077
chriskennerly@paulhastings.com
Jonas P. Herrell
CA Bar No. 279075
jonasherrell@paulhastings.com
PAUL HASTINGS LLP
1117 S. California Ave.
Palo Alto, CA 94304-1106
Telephone: (650) 320-1800
Facsimile: (650) 320-1900

Jeffrey D. Comeau
CA Bar No. 259679
jeffreycomeau@paulhastings.com
PAUL HASTINGS LLP
4747 Executive Drive
Twelfth Floor
San Diego, CA 92121-3114
Telephone: (858) 458-3000
Facsimile: (858) 458-3005

Trey Yarbrough
TX Bar No. 22133500
trey@yw-lawfirm.com
YARBROUGH WILCOX, PLLC
100 E. Ferguson St., Suite 1015
Tyler, Texas 75702
Telephone (903) 595-3111
Facsimile (903) 595-019

**ATTORNEYS FOR AT&T MOBILITY LLC**

Phone: (903) 934-8450
Fax: (903) 934-9257
melissa@gillamsmithlaw.com

John C. Hueston
Alex C. D. Giza
Douglas J. Dixon
HUESTON HENNIGAN LLP
620 Newport Center Dr., Ste. 1300
Newport Beach, CA 92660
Phone: (949) 229-8640
JHueston@hueston.com
AGiza@hueston.com
DDixon@hueston.com

Zachary Elsea
HUESTON HENNIGAN LLP
523 West 6th St., Ste. 400
Los Angeles, CA 90014
Phone: (213) 788-4356
ZElsea@hueston.com

**ATTORNEYS FOR T-MOBILE USA, INC. AND T-MOBILE US, INC.**

## CERTIFICATE OF SERVICE

    I hereby certify that counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system on the 19th day of January, 2016 per Local Rule CV-5(a)(3).

                                                */s/ Michael E. Jones*
                                                Michael E. Jones