# Exhibit A

Trials@uspto.gov  Paper 48
571–272–7822  Entered: January 4, 2016

UNITED STATES PATENT AND TRADEMARK OFFICE
_____

BEFORE THE PATENT TRIAL AND APPEAL BOARD
_____

HTC CORPORATION, HTC AMERICA, ZTE (USA), INC.,
PANTECH CO., LTD., PANTECH WIRELESS, INC.,
LG ELECTRONICS, INC., and LG ELECTRONICS U.S.A., INC.,
Petitioner,

v.

CELLULAR COMMUNICATIONS EQUIPMENT, LLC,
Patent Owner.
_____

Case IPR2014-01133
Patent 7,218,923 B2
_____

Before JENNIFER S. BISK, GREGG I. ANDERSON, and
ROBERT J. WEINSCHENK, *Administrative Patent Judges*.

WEINSCHENK, *Administrative Patent Judge*.

FINAL WRITTEN DECISION
*35 U.S.C. § 318(a) and 37 C.F.R. § 42.73*

IPR2014-01133
Patent 7,218,923 B2

## I. INTRODUCTION

A.  *Background*

NEC Corporation of America, NEC Mobile Communications, Ltd.,[1] HTC Corporation, HTC America, ZTE (USA), Inc., Pantech Co., Ltd., Pantech Wireless, Inc., LG Electronics, Inc., and LG Electronics U.S.A., Inc. (collectively, "Petitioner") filed a Petition (Paper 1, "Pet.") requesting an *inter partes* review of claims 1–5, 8, 9, 24–26, 31, 33, 39, and 40 of U.S. Patent No. 7,218,923 B2 (Ex. 1001, "the '923 patent"). Cellular Communications Equipment, LLC ("Patent Owner") filed a Preliminary Response (Paper 9, "Prelim. Resp.") to the Petition. On January 15, 2015, we instituted an *inter partes* review of claims 1, 2, 4, 5, 8, 24, 25, and 31 ("the challenged claims") of the '923 patent on the following grounds:

| Claim(s) | Statutory Basis | Applied References(s) |
|---|---|---|
| 1, 2, 4, 5, 8, 24, 25, and 31 | 35 U.S.C. § 102(b) | U.K. Patent Pub. No. 2376766 (published Dec. 24, 2002) (Ex. 1008, "D'Aviera") |
| 1, 2, 4, 5, 8, 24, 25, and 31 | 35 U.S.C. § 103(a) | U.S. Patent Pub. No. 2002/0065869 A1 (published May 30, 2002) (Ex. 1010, "Calder"), and U.S. Patent No. 7,836,494 B2 (issued Nov. 16, 2010) (Ex. 1007, "Richardson") |

Paper 10 ("Dec. on Inst."), 17.

After institution, Patent Owner filed a Response (Paper 27, "PO Resp.") to the Petition, and Petitioner filed a redacted Reply (Paper 37, "Pet. Reply") and a sealed Reply (Paper 38) to the Response. An oral hearing was

---

[1] NEC Mobile Communications, Ltd. was formerly known as NEC CASIO Mobile Communications, Ltd. Paper 8, 2. NEC Corporation of America and NEC Mobile Communications, Ltd. were dismissed on February 12, 2015. Paper 15, 2–3.

2

IPR2014-01133
Patent 7,218,923 B2

held on August 26, 2015, and a transcript of the hearing is included in the record. Paper 47 ("Tr.").

We issue this Final Written Decision pursuant to 35 U.S.C. § 318(a) and 37 C.F.R. § 42.73. For the reasons set forth below, Petitioner has not shown by a preponderance of the evidence that claims 1, 2, 4, 5, 8, 24, 25, and 31 of the '923 patent are unpatentable.

    B.    *Related Proceedings*

The parties indicate that the '923 patent is the subject of several cases in the United States District Court for the Eastern District of Texas. Pet. 1–2; Paper 5, 2–3.

    C.    *The '923 Patent*

The '923 patent relates to controlling the behavior of applications residing in a communication terminal, especially in a mobile terminal. Ex. 1001, col. 1, ll. 6–10. According to the '923 patent, the availability of open development platforms allows independent developers to design new applications for mobile terminals and users to download those new applications to their mobile terminals. *Id.* at col. 1, ll. 31–37. One drawback to the use of open development platforms for mobile terminals is that it allows developers to create fraudulent applications that behave contrary to agreements made with network operators. *Id.* at col. 1, ll. 38–47.

To solve this problem, the '923 patent describes a controlling entity residing in the communication terminal. *Id.* at col. 1, ll. 59–60. At least some of the outbound messages generated by an application in the communication terminal are diverted to the controlling entity on their way from the application to the network. *Id.* at col. 1, ll. 60–63. The controlling entity then evaluates whether any changes need to be made to the behavior

IPR2014-01133
Patent 7,218,923 B2

of the application. *Id.* at col. 1, ll. 63–65. For example, the controlling entity may modify the message or prevent the message from being sent. *Id.* at col. 1, l. 65–col. 2, l. 1.

    D.    *Illustrative Claim*

Claims 1 and 24 are independent. Claim 1 is reproduced below.

> 1. A method for controlling application programs in a communication terminal, the method comprising:
>
> sending messages from an application program towards a communication network, the application program residing in a communication terminal;
>
> diverting a message of the messages to a controlling entity residing in the communication terminal; and
>
> based on the message, controlling in the controlling entity whether the application program behaves in a predetermined manner in the communication terminal, the controlling being performed before the message is transmitted from the communication terminal to the communication network.

*Id.* at col. 9, ll. 10–22.

## II. ANALYSIS

    A.    *Identification of Real Parties in Interest*

The Petition identifies several real parties in interest. Pet. 1. Based on the information in the Petition and Preliminary Response, we did not identify any issues under 35 U.S.C. § 312(a)(2) or § 315(b), and we instituted an *inter partes* review. *See* Dec. on Inst. 2. Patent Owner argues in its Response that NEC Corporation and HTC America are real parties in interest that are not identified in the Petition. PO Resp. 3. According to Patent Owner, the Decision on Institution should be vacated because, under 35 U.S.C. § 312(a)(2), a petition that does not identify all the real parties in

4

IPR2014-01133
Patent 7,218,923 B2

interest cannot be considered. PO Resp. 11, 19. For the reasons discussed below, we do not vacate the Decision on Institution.

1. *NEC Corporation*

The Petition identifies NEC Corporation of America ("NEC America") and NEC Mobile Communications, Ltd.[2] ("NEC Mobile") as real parties in interest. Pet. 1. Patent Owner argues that the Petition also should have identified NEC Corporation as a real party in interest because NEC Corporation controlled the participation of NEC America and NEC Mobile in this case. PO Resp. 9–10. Specifically, Patent Owner argues that NEC Corporation executed a Settlement Agreement with Patent Owner that required NEC America and NEC Mobile to withdraw from this case. *Id.* at 10. Patent Owner also argues that certain statements in the Motion to Terminate NEC America and NEC Mobile demonstrate that NEC Corporation controlled the participation of NEC America and NEC Mobile in this case. *Id.* at 9–10.

Patent Owner and NEC Corporation executed the Settlement Agreement that allegedly demonstrates NEC Corporation's control with respect to this case on November 17, 2014. *Id.* at 6. Because Patent Owner is a party to the Settlement Agreement, Patent Owner knew of its terms at that time. *Id.* Thus, Patent Owner could have raised the issue of whether NEC Corporation is a real party in interest when the Settlement Agreement was executed, but did not. Patent Owner, NEC America, and NEC Mobile filed the Motion to Terminate that allegedly demonstrates NEC Corporation's control with respect to this case on February 6, 2015. Paper

---

[2] NEC Mobile Communications, Ltd. was formerly known as NEC CASIO Mobile Communications, Ltd. Paper 8, 2.

5

IPR2014-01133
Patent 7,218,923 B2

13. Because Patent Owner signed the Motion to Terminate, Patent Owner knew of the statements therein at that time. *Id.* at 7–8. Thus, Patent Owner also could have raised the issue of whether NEC Corporation is a real party in interest when the Motion to Terminate was filed, but did not.

Patent Owner instead waited until after we granted the Motion to Terminate and dismissed NEC America and NEC Mobile from this case to argue that NEC Corporation had controlled their participation. Ex. 2002, 19:18–25:18. The result of Patent Owner's delay is that the parties whose conduct is in question no longer are involved in this case. Patent Owner previously assured the remaining parties and the Board that "NEC's termination from the IPRs [would] have little, if any, impact on the remaining parties or the Board." Paper 13, 5. Yet, now, Patent Owner seeks the extraordinary remedy of terminating this case in its entirety based on statements made in the documents that secured the dismissal of NEC America and NEC Mobile (documents which the remaining parties did not sign). Given Patent Owner's delay and previous assurances regarding the dismissal of NEC America and NEC Mobile, we decline to terminate this case with respect to the remaining parties. *See* 37 C.F.R. § 42.12.

    2.    *HTC America*

Patent Owner argues that HTC America should have been identified as a real party in interest in the Petition because of the relationship between HTC America and HTC Corporation. PO Resp. 13–19. Patent Owner's argument is not persuasive because the Petition already identifies HTC America as a real party in interest. Pet. 1.

6

IPR2014-01133
Patent 7,218,923 B2

B.  *Claim Construction*

The claims of an unexpired patent are interpreted using the broadest reasonable interpretation in light of the specification of the patent in which they appear.  37 C.F.R. § 42.100(b); *In re Cuozzo Speed Techs., LLC*, 793 F.3d 1268, 1278–79 (Fed. Cir. 2015).  We determine that no claim terms require express construction.

C.  *Anticipation of Claims 1, 2, 4, 5, 8, 24, 25, and 31*

Petitioner argues that claims 1, 2, 4, 5, 8, 24, 25, and 31 are anticipated by D'Aviera.  Pet. 34.  A claim is anticipated if each limitation of the claim is disclosed in a single prior art reference arranged as in the claim.  *Net MoneyIN, Inc. v. VeriSign, Inc.*, 545 F.3d 1359, 1369 (Fed. Cir. 2008).  We have considered the parties' arguments and supporting evidence, and we determine that Petitioner has not shown by a preponderance of the evidence that claims 1, 2, 4, 5, 8, 24, 25, and 31 are anticipated by D'Aviera.

Independent claim 1 recites "sending messages from an application program towards a communication network," "diverting a message of the messages to a controlling entity," and "based on the message, controlling in the controlling entity whether the application program behaves in a predetermined manner."  Ex. 1001, col. 9, ll. 10–22.  Independent claim 24 recites "an application program configured to send messages towards a communication network," "a diverting unit configured to divert a message of the messages sent from the application program and destined for the communication network to a controlling entity," and "wherein the controlling entity is configured to control, based on the message and before the message is transmitted to the communication network, whether the

IPR2014-01133
Patent 7,218,923 B2

application program behaves in a predetermined manner." *Id.* at col. 10, l. 58–col. 11, l. 5.

Petitioner argues that D'Aviera discloses an isolator engine that intercepts a message sent by an application program towards the Internet and then controls whether the intercepted message is sent to the Internet. Pet. 35–36; Ex. 1008, 3:21–29, 6:14–22. Petitioner relies on the isolator engine in D'Aveira as disclosing the diverting and controlling steps in claim 1, and the diverting unit and controlling entity in claim 24. Pet. 35–36, 38–39; Pet. Reply 3–4; Ex. 2020, 24:4–7, 25:23–25. Patent Owner argues that the diverting and controlling steps in claim 1 are performed by separate components, and that the diverting unit and controlling entity in claim 24 are separate components. PO Resp. 32. Patent Owner argues that Petitioner does not show that D'Aviera discloses a separate component for the diverting limitation in the challenged claims. *Id.* We agree with Patent Owner.

The claims of the '923 patent indicate that the diverting and controlling steps in claim 1 are performed by separate components, and that the diverting unit and controlling entity in claim 24 are separate components. Claim 24, for example, recites the diverting unit and the controlling entity separately, and, thus, indicates that those elements are distinct components. Ex. 1001, col. 10, l. 62–col. 11, l. 3; *see Becton, Dickinson & Co. v. Tyco Healthcare Group, LP*, 616 F.3d 1249, 1254 (Fed. Cir. 2010) ("Where a claim lists elements separately, 'the clear implication of the claim language' is that those elements are 'distinct component[s]' of the patented invention."). Claim 24 also specifies that the diverting unit is configured to divert a message "to" the controlling entity, which further indicates that the

8

IPR2014-01133
Patent 7,218,923 B2

diverting unit is separate from the controlling entity. Ex. 1001, col. 10, ll. 62–65; *see Microsoft Corp. v. Proxyconn, Inc.*, 789 F.3d 1292, 1299 (Fed. Cir. 2015) ("Not only are the 'two other computers' recited independently from, and in addition to, the gateway and caching computer, the word 'other' denotes a further level of distinction.").[3]  Similarly, claim 1 recites diverting a message "to" a controlling entity and then controlling the application program "in" the controlling entity, which indicates that the diverting step is performed by something other than the controlling entity.[4]  Ex. 1001, col. 9, ll. 15–22; *see NTP, Inc. v. Research in Motion, Ltd.*, 419 F.3d 1282, 1300 (Fed. Cir. 2005) (holding that the "originating processor" and "gateway switch" are separate components because, *inter alia*, the claim language shows that information "is *transmitted from* an 'originating processor' *to* a gateway switch), *abrogated on other grounds by IRIS Corp. v. Japan Airlines Corp.*, 769 F.3d 1359, 1361 n.1 (Fed. Cir. 2014).

The specification of the '923 patent confirms that the diverting and controlling steps in claim 1 are performed by separate components, and that the diverting unit and controlling entity in claim 24 are separate components. In one embodiment, the '923 patent discloses an SIP protocol stack as the diverting unit and a trusted agent as the controlling entity. Ex. 1001, col. 2, ll. 9–10, col. 4, ll. 51–63, col. 6, ll. 20–26, Figs. 2, 6. In another embodiment, the '923 patent discloses a middleware modification module residing between the application programs and the SIP protocol stack as the

---

[3] *Cf. Retractable Techs., Inc. v. Becton, Dickson & Co.*, 653 F. 3d 1296, 1303 (Fed. Cir. 2011) (holding that the claim language indicates that the "needle holder" and "retainer member" need not be separate components).

[4] Neither party argues that claim 1 should be treated differently than claim 24 because claim 1 is a method claim.

IPR2014-01133
Patent 7,218,923 B2

diverting unit. *Id.* at col. 6, ll. 49–61, Figs. 7, 8. In both embodiments, the diverting unit and the controlling entity are described as being separate components. *Id.* at col. 1, ll. 59–60, col. 4, ll. 51–63, col. 6, ll. 20–26, col. 6, ll. 49–61, col. 7, ll. 9–12, Figs. 2, 6–8; *see Microsoft*, 789 F.3d at 1299 ("And in each instance where it is used, the phrase 'two other computers' describes components that are separate and distinct from the gateway and the caching computer.").[5] For example, Figures 2 and 6–8 of the '923 patent show that the SIP protocol stack and middleware modification module are separate from the trusted agent. Ex. 1001, Figs. 2, 6–8; *see Microsoft*, 789 F.3d at 1300 ("The figures of the '717 patent separately identify and number each component of the system."). Those figures also show that the trusted agent may reside in a tamper resistant area of the terminal that is separate from the area of the terminal where the SIP protocol stack and middleware modification module reside. Ex. 1001, col. 3, ll. 60–63, Figs. 2, 6–8.

      Petitioner does not argue that the claims or the specification of the '923 patent indicate that the diverting and controlling steps in claim 1 can be performed by the same component or that the diverting unit and the controlling entity in claim 24 can be the same component. Pet. Reply 1–8. Petitioner instead argues that "it is well-established that the same structure can be relied upon to satisfy multiple claim limitations." *Id.* at 2. Petitioner cites to two cases as support for its argument, *In re Kelley*, 305 F.2d 909 (CCPA 1962), and *Intellectual Property Development, Inc. v. UA-Columbia*

---

[5] *See also Becton, Dickinson*, 616 F.3d at 1254–55; *cf. Powell v. Home Depot U.S.A., Inc.*, 663 F.3d 1221, 1231–32 (Fed. Cir. 2011) (holding that the specification discloses that the "cutting box" may also function as a "dust collection structure," and, thus, the claim terms do not require separate components).

10

IPR2014-01133
Patent 7,218,923 B2

*Cablevision of Westchester, Inc.*, 336 F.3d 1308 (Fed. Cir. 2003). Pet. Reply 2. However, neither case supports Petitioner's broad statement that the same structure always can be relied upon to satisfy multiple claim limitations. In *Kelley*, the U.S. Court of Customs and Patent Appeals determined that it was reasonable to interpret one structure as supporting two recited functions because the specification described that structure as performing both functions. 305 F.2d at 913–14. Similarly, in *Intellectual Property Development*, the Federal Circuit determined that the same structure corresponded to two means-plus-function limitations because the specification described that structure as performing the functions recited in both limitations. 336 F.3d at 1318–20. In contrast, the specification of the '923 patent consistently describes separate components for the diverting and controlling limitations. Ex. 1001, col. 1, ll. 59–60, col. 4, ll. 51–63, col. 6, ll. 20–26, col. 6, ll. 49–61, col. 7, ll. 9–12, Figs. 2, 6–8.

      Petitioner also argues that one part of the isolator engine in D'Aviera diverts a message and another part controls the message. Pet. Reply 5, 7. According to Petitioner, to divert a message sent from an application program, the isolator engine is configured to listen to a particular port number used by the application program. *Id.* at 5; Ex. 1008, 5:3–14. To control an intercepted message, the isolator engine compares the intercepted message to a file containing a privacy list to determine whether the intercepted message contains any of the items in the privacy list. Pet. Reply 7; Ex. 1008, 3:26–29, 6:14–22. Petitioner's argument is not persuasive. Petitioner describes the different functions performed by the isolator engine, but does not show that the isolator engine is two separate components.

11

IPR2014-01133
Patent 7,218,923 B2

Therefore, because Petitioner does not identify separate components in D'Aviera for performing the diverting and controlling steps in claim 1, or for the diverting unit and controlling entity in claim 24, Petitioner has not shown by a preponderance of the evidence that D'Aviera anticipates claims 1, 2, 4, 5, 8, 24, 25, and 31.

    D.    *Obviousness of Claims 1, 2, 4, 5, 8, 24, 25, and 31*

Petitioner argues that claims 1, 2, 4, 5, 8, 24, 25, and 31 would have been obvious over Calder and Richardson.  Pet. 43.  A claim is unpatentable as obvious under 35 U.S.C. § 103(a) if the differences between the claimed subject matter and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which the subject matter pertains.  *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007).  The question of obviousness is resolved on the basis of underlying factual determinations, including: (1) the scope and content of the prior art; (2) any differences between the claimed subject matter and the prior art; (3) the level of ordinary skill in the art; and (4) any objective indicia of non-obviousness.  *Graham v. John Deere Co.*, 383 U.S. 1, 17–18 (1966).  We have considered the parties' arguments and supporting evidence, and we determine that Petitioner has not shown by a preponderance of the evidence that claims 1, 2, 4, 5, 8, 24, 25, and 31 would have been obvious over Calder and Richardson.

Petitioner argues that Calder teaches an interception module that intercepts a system command sent by an application program toward an operating system and then modifies the intercepted system command.  Pet. 47; Ex. 1010 ¶¶ 7, 71, 73, 106, 158.  Petitioner relies on the interception module in Calder as teaching the diverting and controlling steps in claim 1,

12

IPR2014-01133
Patent 7,218,923 B2

and the diverting unit and controlling entity in claim 24.  Pet. 47, 51; Pet. Reply 9; Ex. 2020, 41:1–4, 41:22–24, 44:13–19.  Patent Owner argues that Petitioner does not show that Calder teaches a separate component for the diverting limitation in the challenged claims.  PO Resp. 40.  We agree with Patent Owner.

As discussed above, the claims and the specification of the '923 patent indicate that the diverting and controlling steps in claim 1 are performed by separate components, and that the diverting unit and controlling entity in claim 24 are separate components.  *See supra* Section II.B.  Petitioner does not identify separate components in Calder and Richardson for performing the diverting and controlling steps in claim 1, or for the diverting unit and controlling entity in claim 24.  Pet. 47, 51; Pet. Reply 9; Ex. 2020, 41:1–4, 41:22–24, 44:13–19.  Petitioner also does not argue that using separate components to divert a message and control an application program would have been obvious to one of ordinary skill in the art based on Calder and Richardson.  Pet. 43–55; Pet. Reply 9–12; Ex. 1011 ¶¶ 85–86.  Therefore, Petitioner has not shown by a preponderance of the evidence that claims 1, 2, 4, 5, 8, 24, 25, and 31 would have been obvious over Calder and Richardson.

      E.    *Petitioner's Motion to Exclude*

Petitioner filed a Motion to Exclude Exhibits 2006–2019 (Paper 41), to which Patent Owner filed an Opposition (Paper 43), and Petitioner filed a Reply (Paper 45).  Petitioner's Motion to Exclude Exhibits 2006–2019 is *dismissed as moot* because this Decision does not rely on Exhibits 2006–2019.

IPR2014-01133
Patent 7,218,923 B2

F. *Petitioner's Motion to Seal*

Petitioner filed a Motion to Seal. Paper 35 ("Mot."). Petitioner requests entry of a protective order and seeks to seal portions of Petitioner's Reply. *Id.* at 1, 3. For the reasons discussed below, the Motion to Seal is *granted*.

The parties agree to the default protective order found in Appendix B of the Office Patent Trial Practice Guide with one modification. *Id.* at 3. Specifically, the parties limit the individuals who can access confidential information to outside counsel for the parties, the Office, and their support personnel. *Id.* We hereby enter the Protective Order filed as Paper 36 in this proceeding, which governs the treatment and filing of confidential information in this proceeding.

There is a strong public policy that favors making information filed in an *inter partes* review open to the public. *Garmin Int'l, Inc. v. Cuozzo Speed Techs. LLC*, IPR2012-00001, Paper 34, 1–2 (PTAB Mar. 14, 2013). The standard for granting a motion to seal is good cause. 37 C.F.R. § 42.54. That standard includes showing that the information addressed in the motion to seal is truly confidential, and that such confidentiality outweighs the strong public interest in having the record open to the public. *See Garmin* IPR2012-00001, Paper 34, 2–3. The portions of the Reply that Petitioner seeks to seal relate to the terms of the confidential Settlement Agreement between Patent Owner and NEC Corporation. Mot. 2–3. We have reviewed the Motion to Seal, the document sought to be sealed, and the redacted, public version of that document, and we determine that good cause exists to grant Petitioner's Motion to Seal.

14

IPR2014-01133
Patent 7,218,923 B2

### III. CONCLUSION

Petitioner has not shown by a preponderance of the evidence that claims 1, 2, 4, 5, 8, 24, 25, and 31 are unpatentable under 35 U.S.C. §§ 102(b), 103(a).

### IV. ORDER

In consideration of the foregoing, it is hereby:

ORDERED that claims 1, 2, 4, 5, 8, 24, 25, and 31 of the '923 patent are not shown unpatentable;

FURTHER ORDERED that Petitioner's Motion to Exclude is *dismissed as moot*;

FURTHER ORDERED that Petitioner's Motion to Seal is *granted*;

FURTHER ORDERED that the Protective Order filed as Paper 36 is entered in this proceeding;

FURTHER ORDERED that the identified portions of Petitioner's Reply (Paper 38) will be sealed; and

FURTHER ORDERED that, because this is a Final Written Decision, parties to the proceeding seeking judicial review of the decision must comply with the notice and service requirements of 37 C.F.R. § 90.2.

IPR2014-01133
Patent 7,218,923 B2

PETITIONER:

Alan A. Wright
Nathan H. Cristler
Steve B. Kelber
H.C. PARK & ASSOCIATES, PLC
awright@park-law.com
ncristler@park-law.com
skelber@park-law.com

Baldine Paul
William J. Barrow
Robert G. Pluta
Amanda K. Streff
MAYER BROWN LLP
bpaul@mayerbrown.com
wbarrow@mayerbrown.com
rpluta@mayerbrown.com
astreff@mayerbrown.com

Steven A. Moore
Richard W. Thill
PILLSBURY WINTHROP SHAW PITTMAN LLP
steve.moore@pillsburylaw.com
richard.thill@pillsburylaw.com
LOEU@pillsburylaw.com

PATENT OWNER:

Barry J. Bumgardner
John Murphy
NELSON BUMGARDNER, P.C.
barry@nelbum.com
CCE-IPR@nelbum.com

Amedeo F. Ferraro
MARTIN & FERRARO, LLP
aferraro@martinferraro.com

16