# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| **CELLULAR COMMUNICATIONS EQUIPMENT LLC,** <br><br> Plaintiff, <br><br> v. <br><br> **SAMSUNG ELECTRONICS CO., LTD.,** et al., <br><br> Defendants. | **Civil Action No. 6:14-cv-759** |

**PLAINTIFF CELLULAR COMMUNICATIONS EQUIPMENT LLC'S RESPONSE TO DEFENDANTS' SUPPLEMENTAL BRIEF ON CLAIM CONSTRUCTION**

Defendants mischaracterize and rewrite the IPR record in IPR2014-01133 in a deliberate attempt to mislead the Court regarding what was actually argued and ultimately decided by the Patent Trial and Appeal Board ("PTAB").

The claims of the '8923 patent require an intervening step of "diverting a message of the messages to a controlling entity," as recited in claim 1, or "a diverting unit configured to divert a message of the messages … to a controlling entity," as recited in claim 24. The claims clearly do **not** require that this intervening diverting step be performed by a function or mechanism **physically** separate from the controlling entity. Rather, the claims merely require diverting a message to a controlling entity which, in turn, controls the behavior of an application program. This is consistent with the PTAB's interpretation of claims 1 and 24 to require the distinct diversion of a message "to" the controlling entity, "which indicates that the diverting step is performed by something other than the controlling entity." Exh. A at 8-9.[1]

The specification of the '8923 patent is also clear that the mechanism for diverting and the mechanism for controlling do not require some physical separateness. The specification merely provides that distinct logical mechanisms perform the diverting and controlling. For instance, in one embodiment, a SIP protocol stack diverts a message, and the trusted agent or controlling entity controls the message. Exh. E at 4:51-63, Figs. 2, 6. In another embodiment, a middleware modification module diverts a message, and the trusted agent controls the message. Exh. E at 6:49-61, Figs. 7, 8. In either embodiment, the "[t]he trusted agent may be a dedicated software agent or a Digital Rights Management (DRM) agent whose normal functionality has been modified for the method of the invention." Exh. E at 3:63-66. Thus, the diverting and controlling can be carried out by separate logical mechanisms (software functions, protocol

---

[1] Unless stated otherwise, exhibit references refer to exhibits submitted with Defendants' Supplemental Brief (Dkt. 173).

1

stacks, middleware modules, etc.), and are not limited to separate physical components.[2]

With little other support, Defendants focus on the embodiment of dependent claim 26, "wherein the controlling entity is configured to reside in a tamper resistant area of the terminal." *See* Def. Br. at 3. This focus is misplaced, however. The PTAB specifically acknowledged that the "trusted agent **may** reside in a tamper resistant area," not that it **must** reside in a separate, tamper resistant area. Exh. A at 10.[3] And even as to dependent claim 26, the specification and claims are agnostic as to whether the mechanism for performing the diverting step can **also** reside in a tamper resistant area of the terminal.

Moreover, contrary to Defendants' assertion, CCE never argued that the diverting and controlling must be performed by **physically** separate components. Rather, CCE argued that "none of the cited references in Grounds A and B disclose, teach, or suggest the claimed 'divert[ing]' step…." Exh. D at 45; *see*, *e.g.*, Exh. D at 30-31. The IPR Petitioners could not, in response, explicitly identify anything (physical or logical) capable of diverting a message to a controlling entity. This deficiency is underscored by the Petitioners' expert, who consistently maintained that the prior art allegedly "**inherently discloses** a program for diverting messages from application programs to the [isolator engine/ interception module]." *See* Nelson Decl. at Exh. 1, ¶¶ 83, 85; App. A-2 at 10; App. B-1 at 25.

Defendants now seek to rewrite the IPR record, mischaracterizing the prior art in the process. They would have the Court believe that the prior art discloses (which it does not) that a single software module performs both of the subject steps. This is not the case, and, tellingly, Defendants fail to cite any of the Petitioners' own papers in the IPR record for support.

---

[2] The PTAB clearly considers such logical mechanisms to be "components," as reflected in the PTAB's own interpretation of the patent specification. *See* Exh. A at 9-10.

[3] This is not to suggest that the tamper resistant area of the patent is a separate physical area. There is no evidence supportive of the notion that "tamper resistant area" means an area **physically** separated from other areas where software may reside.

Thus, Defendants resort to sleight of hand, selectively quoting from CCE's Patent Owner's Response. *See* Def. Br. at 3, n.4.[4] Indeed, they meld phrases from two paragraphs but use an ellipsis to omit the point — that the prior art includes "no disclosure of an intervening step of 'divert[ing]' a message to the claimed controlling entity." Exh. D at 30. In other words, CCE's original statement, in context, merely highlights the Petitioners' failure to identify anything in the art – structure, process, function, etc. – capable of diverting a message.

Ultimately, the PTAB agreed with CCE that the Petitioners never identified anything, in any reference, capable of diverting a message "to" a controlling entity:

> "Patent Owner argues that Petitioner does not show that [the prior art] discloses a separate component for the diverting limitation in the challenged claims. *Id.* We agree with Patent Owner."

Exh. A at 8, 13. In making its findings, the PTAB never ruled (or even remotely suggested) that actual, **physical** separation is required. Such would be wholly inconsistent with the patent's intrinsic record, including the IPR record. And CCE made no statement – let alone any unmistakable disavowing statement – that could warrant a construction that includes the notion of "physical" separateness. Not even Defendants are willing to make such an insupportable claim.

The fact is, plainly and simply, that the prior art at issue does not include anything that can be considered a diverting unit. Yet Defendants here hope to avoid infringement through claim construction by extrapolating a physical separateness limitation from PTAB findings that that do not go nearly so far. At most, according to the PTAB, it can be said that "the diverting step is performed by something other than the controlling entity." Exh. A at 9. This is already clear from the express language of the affected claims.

---

[4] Defendants preface their footnoted point by stating that CCE was making arguments "as a matter of claim construction." This is fiction. The quoted passage deals strictly with the deficiencies of the cited art.

| | |
|---|---|
| **Dated: January 26, 2016** | Respectfully submitted, |

*/s/ Edward R. Nelson III*
Edward R. Nelson III
ed@nelbum.com
Texas State Bar No. 00797142
Ryan P. Griffin
ryan@nelbum.com
Texas State Bar No. 24053687
Thomas C. Cecil
tom@nelbum.com
Texas State Bar No. 24069489
NELSON BUMGARDNER PC
3131 West 7th Street, Suite 300
Fort Worth, Texas 76107
Phone:  (817) 377-9111
Fax:  (817) 377-3485

T. John Ward, Jr.
Texas State Bar No. 00794818
J. Wesley Hill
Texas State Bar No. 24032294
Claire Abernathy Henry
Texas State Bar No. 24053063
WARD & SMITH LAW FIRM
P.O. Box 1231
1127 Judson Rd. Ste. 220
Longview, Texas  75606-1231
(903) 757-6400
(903) 757-2323 (fax)
jw@jwfirm.com
wh@wsfirm.com
claire@wsfirm.com

**ATTORNEYS FOR PLAINTIFF
CELLULAR COMMUNICATIONS
EQUIPMENT LLC**

**CERTIFICATE OF SERVICE**

I hereby certify that a true and correct copy of the foregoing document was filed electronically in compliance with Local Rule CV-5 on this 26th day of January, 2016.  As of this date, all counsel of record that has consented to electronic service and are being served with a copy of this document through the Court's CM/ECF system under Local Rule CV-5(a)(3)(A).

*/s/ Edward R. Nelson III*