**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION**

| | |
|---|---|
| CELLULAR COMMUNICATIONS EQUIPMENT LLC,<br><br>　　Plaintiff,<br><br>v.<br><br>HTC CORPORATION, et al.,<br><br>　　Defendants. | CIVIL ACTION NO. 6:13-cv-507<br><br>**CONSOLIDATED LEAD CASE** |
| CELLULAR COMMUNICATIONS EQUIPMENT LLC,<br><br>　　Plaintiff,<br><br>v.<br><br>SAMSUNG ELECTRONICS CO., LTD., et al.,<br><br>　　Defendants. | CIVIL ACTION NO. 6:14-cv-759 |
| CELLULAR COMMUNICATIONS EQUIPMENT LLC,<br><br>　　Plaintiff,<br><br>v.<br><br>LG ELECTRONICS, INC., et al.,<br><br>　　Defendants. | CIVIL ACTION NO. 6:14-cv-982<br><br>**CONSOLIDATED LEAD CASE** |

**MEMORANDUM OPINION AND ORDER**

　　Before the Court is Defendant AT&T Mobility's Motion to Prevent Disclosure of Protected Information and For Disqualification of Dr. Alon Konchitsky ("the Motion"). Case No.

1

6:13-cv-507, Doc. No. 471; Case No. 6:14-cv-759, Doc. No. 113; Case No. 6:14-cv-982, Doc. No. 122. The briefing is identical in all three cases. Unless otherwise stated, all citations to the briefing refer to the docket numbers in Case. No. 6:13-cv-507. For the reasons set out below, the Motion is **DENIED**.

## BACKGROUND

AT&T Mobility LLC ("AT&T") and Cricket Communications, Inc. ("Cricket") engaged Dr. Alon Konchitsky to perform consulting services in multiple cases filed by Intellectual Ventures[1] in 2014. Doc. No. 471 at 2. On May 9, 2014, Dr. Konchitsky signed an engagement letter memorializing this relationship. *See* Doc. No. 471, Ex. 1 ("Engagement Letter"). On August 31, 2015, Plaintiff Cellular Communications Equipment LLC ("CCE") disclosed Dr. Konchitsky as an Outside Consultant pursuant to the Protective Order in each of these cases[2]. This disclosure did not include any reference to Dr. Konchitsky's work for AT&T on the Intellectual Venture suits. *See* Doc. No. 471 at 3; *see also* Doc. No. 471, Ex. D. AT&T then inquired whether Dr. Konchitsky had worked with, consulted with, or been involved with any AT&T entities or affiliates. Doc. No. 471, Ex. F at 4. In response, CCE confirmed that Dr. Konchitsky had briefly consulted with Gibson Dunn—who was counsel for AT&T—in what CCE described as a "limited engagement." *Id.* AT&T communicated its objections to CCE based upon Dr. Konchitsky's work on the Intellectual Ventures suits. *Id.* After a formal meet and confer, the parties reached an impasse. *Id.* at 1. AT&T promptly filed the present motion.

---

[1] *Intellectual Ventures I LLC v. AT&T Mobility LLC et. al.*, D. Del. Civil Action No. 13-1668 (LPS), *Intellectual Ventures II LLC v. AT&T Mobility LLC et al.*, D. Del. Civil Action No. 14-1229 (LPS), *Intellectual Ventures I LLC v. Cricket Communications, Inc. et al.*, D. Del. Civil Action No. 13-1669 (LPS), *and Intellectual Ventures II LLC v. Cricket Communications, Inc. et al.*, D. Del. Civil Action No. 14-1230 (LPS) (hereafter "Intellectual Ventures suits").

[2] The relevant Protective Orders are: Case No. 6:13-cv-507, Doc. No. 310; Case No. 6:14-cv-759, Doc. No. 74; and Case No. 6:14-cv-982, Doc. No. 92.

**APPLICABLE LAW**

The Court has the inherent power to disqualify an expert. *Koch Ref. Co. v. Jennifer L. Boudreaux MV,* 85 F.3d 1178, 1181 (5th Cir.1996). In *Koch,* the Fifth Circuit adopted the two-step analysis used by lower courts in disqualification cases: (1) whether the opposing party had a confidential relationship with the expert; and (2) whether the opposing party disclosed confidential or privileged information relevant to the instant case to the expert. *Id.* (citation omitted). The party seeking disqualification bears the burden of proving these elements, and only if both prongs are met should the witness be disqualified. *Id.*

**ANALYSIS**

AT&T argues that Dr. Konchitsky has an ongoing consulting engagement with AT&T and thus CCE's engagement of Dr. Konchitsky in the instant case presents a conflict of interest. As a result, AT&T is requesting two forms of relief: (1) that Dr. Konchitsky is precluded from accessing AT&T's Protected Information pursuant to the Protective Order in each case; and (2) that Dr. Konchitsky is disqualified as an Outside Consultant. AT&T asks the Court to disqualify Dr. Konchitsky for two reasons: first, based on a conflict of interest; and second, based on a contractual obligation. Disqualification on the basis of the alleged contractual relationship will be discussed first because the existence or non-existence of a contractual relationship between AT&T and Dr. Konchitsky will inform the Court's analysis as to both of AT&T's requested forms of relief.

*Disqualification*

    1. *Contractual Obligation*

According to AT&T, Dr. Konchitsky's engagement with AT&T was never terminated and thus he is contractually prohibited from consulting adverse to AT&T without prior express

written permission. Fung Decl. ¶ 6; Engagement Letter at 2. AT&T is correct, if the engagement has not been terminated. However, CCE argues that the engagement was terminated over a year before CCE disclosed Dr. Konchitsky as an Outside Consultant. Doc. No. 474 at 1. Dr. Konchitsky states that he spoke with AT&T's counsel, Nicholas Fung, in June 2014, whereby Mr. Fung told Dr. Konchitsky to cease his work and not spend any more time on the project. Konchitsky Decl. ¶ 5. Dr. Konchitsky understood this to be a termination of the engagement. *Id.*

Despite AT&T's repeated urging that the engagement has not been terminated, AT&T has brought forth no evidence to contradict Dr. Konchitsky's declaration. AT&T's briefing, as well as the declaration of Mr. Fung, does not refute the contents or even the existence of the phone call, but rather simply concludes that the engagement was never terminated. *See* Fung Decl. ¶ 4 ("Neither Gibson Dunn nor AT&T/Cricket has terminated the engagement with Dr. Konchitsky."); Doc. No. 484 at 3-4 ("AT&T's counsel flatly denies ever terminating Dr. Konchitsky's engagement…Setting aside the different accounts of this alleged phone call…"). AT&T alludes to differing accounts of the phone call between Dr. Konchitsky and Mr. Fung, but AT&T offers neither an alternative explanation of the contents of the phone call nor any denial that the phone call took place.

Rather, AT&T instead concludes that the phone call is irrelevant because the phone call itself could not have terminated the engagement. Doc. No. 484 at 4. AT&T argues that the engagement can only be terminated by a written instrument. *Id.* It is undisputed that there is no written instrument terminating the engagement and thus, AT&T concludes that the engagement is ongoing. *Id.* That conclusion does not follow from the argument or the terms of the Engagement Letter.

The Engagement Letter provides that "AT&T or Cricket may terminate this engagement

for any reason, or no reason, by giving written notice to you [Dr. Konchitsky]." Engagement Letter at 2. First, the letter uses permissive language, "may," rather than exclusive language such as "shall" or "must." *Id.* Second, the letter provides no other mechanism by which to terminate the engagement. If AT&T's interpretation of the letter is correct, the only way the engagement can be terminated is by written notice from AT&T or Cricket; Dr. Konchitsky can never terminate the engagement himself. This interpretation does not comport with common sense. The Engagement Letter itself does not state an exhaustive list of termination methods; rather it states one way in which it *may* be terminated: by written notice from AT&T to Dr. Konchitsky. AT&T has not brought forth any other explanation as to why a phone call from Mr. Fung telling Dr. Konchitsky to cease work would not terminate the engagement.

Other than AT&T's claim that it never terminated the engagement, there is no evidence that the engagement is ongoing. AT&T has brought forth no evidence that Dr. Konchitsky conducted any work for AT&T in the 14 months between the June 2014 phone call and the August 2015 disclosure of Dr. Konchitsky as CCE's Outside Consultant. AT&T has not refuted CCE's contention that the engagement was terminated prior to CCE's engagement of Dr. Konchitsky as an Outside Consultant. Dr. Konchitsky is only prohibited from consulting adverse to AT&T during the course of the engagement with AT&T. *See* Engagement Letter at 2. Thus, because the engagement has been terminated, Dr. Konchitsky is not contractually prohibited from serving as CCE's expert in this case.

2. *Conflict of Interest*

To disqualify Dr. Konchitsky on the basis of a conflict of interest, AT&T must establish both prongs of the *Koch* test: (1) that AT&T had an objectively reasonable basis for a confidential relationship with Dr. Konchitsky; and (2) that AT&T's confidential or privileged

5

information was disclosed to Dr. Konchitsky during this confidential relationship. *Koch*, 85 F.3d at 1181.

It appears undisputed that AT&T had an objectively reasonable basis for a confidential relationship with Dr. Konchitsky. It is clear that Dr. Konchitsky was hired by AT&T to consult on the Intellectual Ventures suits. CCE does not appear to dispute this relationship. CCE also does not appear to dispute that it is reasonable that AT&T would conclude that a confidential relationship arose out of the engagement between AT&T and Dr. Konchitsky. Thus, AT&T has established the first prong of the *Koch* test.

The real dispute is whether Dr. Konchitsky became privy to any of AT&T's confidential or privileged information that is relevant to the instant case. According to AT&T, Dr. Konchitsky received "confidential attorney work product communications relating to AT&T's litigation strategy and defenses." Doc. No. 471 at 5; Fung Decl. ¶ 5. However, AT&T has not explained what confidential attorney work product was communicated to Dr. Konchitsky nor has AT&T explained the circumstances under which Dr. Konchitsky learned any confidential or privileged information.

Dr. Konchitsky has stated that he received "no confidential or proprietary information, let alone any confidential or proprietary information of AT&T" during the AT&T engagement. Konchitsky Decl. ¶ 8. He further elaborated that his work was limited to "evaluating the validity of a subset of the patents-in-suit" whereby he was provided with the patent numbers and asked to search for prior invalidating art. *Id.* at ¶ 3. Purely technical information is not confidential. *Koch*, 85 F.3d at 1182. Thus, CCE is correct that this information alone does not rise to the level of confidential and privileged information. Furthermore, AT&T has not identified any other allegedly confidential information it provided to Dr. Konchitsky in connection with the

engagement. In *Mobile Telecommunications*, the one case that AT&T cites where an expert with a conflict of interest was disqualified, both parties agreed that the expert obtained confidential information during his confidential relationship with defendants. *Mobile Telecommunications Tech., LLC v. LG Elec. Mobilecomm U.S.A., Inc.*, Case No. 2:13-cv-947, Doc. No. 132 (E.D. Tex. July 22, 2015). Here, CCE disputes that Dr. Konchitsky was privy to any confidential or privileged information as a result of his relationship with AT&T; AT&T has the burden to show otherwise.

In *Koch*, the movant described generally what type of confidential information the expert received and the circumstances under which he received it. *Koch*, 85 F.3d at 1182 ("Continental contends its counsel 'spent considerable time with Mr. Vinas explaining his entire theory of the case as well as trial tactics for the 1990 trial'…counsel 'furnished Mr. Vinas with documents that had been generated in preparation for the trial of this matter and participated in the formulation of graphics by Mr. Vinas.'"). AT&T has provided no such information in this case. Other than AT&T's conclusory statements that Dr. Konchitsky "received confidential work product communications relating to AT&T's litigation strategy and defenses," there is no evidence that AT&T communicated any confidential information to Dr. Konchitsky. Furthermore, Dr. Konchitsky himself denies being privy to any information other than non-confidential, purely technical information. AT&T was given an opportunity to refute Dr. Konchitsky's declaration in its Reply but gave no additional facts and merely stated that CCE's argument "conflicts with common sense[3]." Doc. No. 484 at 4. AT&T has not carried its burden to show that confidential

---

[3] AT&T also argues that CCE's argument conflicts with the presumption under the Federal Rules that "'facts known or opinions held by' a consulting expert are confidential." Doc. No. 484 at 4 (citing FED. R. CIV. P. 26(b)(4)). AT&T seems to be arguing that there is a presumption that it disclosed confidential or privileged information to Dr. Konchitsky by virtue of his consultation with AT&T. AT&T has cited no cases holding that this would be enough to satisfy the second prong of the *Koch* test. Additionally, Dr. Konchitsky's explicit denial is enough to rebut any presumption that may have initially existed.

or privileged information was disclosed to Dr. Konchitsky during his engagement with AT&T. Thus, AT&T has not met the second prong of the *Koch* test and Dr. Konchitsky cannot be disqualified on that basis.

*Disclosure of Protected Information*

AT&T argues that the Protective Order requires that, prior to the disclosure of Protected Information to an Outside Consultant, the disclosing party "shall determine that disclosure of particular Protected Information to an Outside Consultant is, in that counsel's good faith judgment, reasonably necessary to the party's representation." Doc. No. 310 at ¶ 6.7.2[4]. AT&T characterizes CCE's disclosure of Dr. Konchitsky as an Outside Consultant as a "blanket disclosure." Doc. No. 471 at 4. AT&T asserts that the disclosure does not identify any particular AT&T Protected Information that CCE intends to disclose to Dr. Konchitsky or why Dr. Konchitsky would need to see that Protected Information. *Id.*; Doc. No. 484 at 2.

CCE contends that Dr. Konchitsky is an infringement expert and thus his analysis will be informed, in part, by AT&T's confidential testing procedures, reports, and analyses for each accused product. Doc. No. 486 at 2. CCE asserts that it has communicated with AT&T repeatedly and explained that the purpose of opposing this motion is to "preserve Dr. Konchitsky's right and ability, consistent with the dictates of the Protective Orders…to review and evaluate AT&T confidential information…" *Id.* at 1.

AT&T's main concern appears to be whether Dr. Konchitsky will maintain AT&T's Protected Information in confidence, under the terms of the Protective Order. Doc. No. 471 at 4; Doc. No. 484 at 2-3. According to AT&T, Dr. Konchitsky has violated his confidentiality agreement with AT&T by consulting for a party adverse to AT&T and disclosing his previous engagement with AT&T and thus there are "serious doubts" as to whether he can keep Protected

---

[4] This language can be found in paragraph 6.7.2 in each of the three relevant Protective Orders.

Information confidential. Doc. No. 484 at 2.

First, as discussed above, Dr. Konchitsky's engagement with AT&T was terminated before CCE retained him as an Outside Consultant and thus Dr. Konchitsky did not violate his agreement by consulting for a party adverse to AT&T. Second, Dr. Konchitsky only disclosed his previous relationship to AT&T in response to a direct inquiry from AT&T. CCE's initial disclosure of Dr. Konchitsky did not include reference to his work for AT&T. AT&T then specifically asked CCE to confirm whether Dr. Konchitsky had consulted for AT&T in any capacity in the past. Doc. No. 471, Ex. F at 4. In response to AT&T's prompting, CCE contacted Dr. Konchitsky who then disclosed his prior work with AT&T. *Id.*; Doc. No. 474 at 2 n. 1. It is unfair for AT&T to originally characterize CCE's initial disclosure of Dr. Konchitsky as deficient, because it omitted the prior consultation with AT&T, and now argue that disclosure of that omitted prior consultation demonstrates Dr. Konchitsky's inability to abide by a Protective Order. This is especially true when the disclosure of the prior consultation only came about in direct response to a specific inquiry by AT&T. Therefore, AT&T has not established that Dr. Konchitsky should be precluded from having access to AT&T's Protected Information in his capacity as an Outside Consultant subject to the Protective Order.

## **CONCLUSION**

For the reasons set forth above, Defendant AT&T Mobility's Motion to Prevent Disclosure of Protected Information and For Disqualification of Dr. Alon Konchitsky (Case No. 6:13-cv-507, Doc. No. 471; Case No. 6:14-cv-759, Doc. No. 113; Case No. 6:14-cv-982, Doc. No. 122) is **DENIED**.

So ORDERED and SIGNED this 24th day of March, 2016.

_____
K. NICOLE MITCHELL
UNITED STATES MAGISTRATE JUDGE